A96A1243. O'DELL et al. v. ST. PAUL FIRE & MARINE INSURANCE COMPANY et al.
(478 SE2d 418)

SMITH, Judge.

This declaratory judgment action was filed by Daniel Lee O'Dell and two companies owned by him, DRACS Consulting Group, Inc. (DRACS) and Direct Recruiting Associates (DRA), against St. Paul Fire & Marine Insurance Company and Tracey Gilleland. O'Dell and his companies appeal from the trial court's grant of St. Paul's motion for summary judgment and its denial of their motion for summary judgment.

It is necessary to relate the pertinent facts regarding the underlying tort action from which this action arose. On September 16, 1994, Gilleland filed a complaint against O'Dell, DRACS, and DRA. She alleged that O'Dell sexually taunted and harassed her, with the knowledge of DRACS and DRA, during her employment as office manager by DRACS and DRA from October 1991 to March 26, 1993. The complaint described numerous crude sexual comments and lascivious gestures made by O'Dell specifically to and about Gilleland. For example, Gilleland alleged that O'Dell called her a "whore" and a "slut" and that when she "would walk into a room in front of O'Dell, he would say to the others present, 'I could have that if I wanted it.'" Another allegation was that O'Dell used a stick to lift up Gilleland's skirt and would hit the tops of her feet with the stick "in order to humiliate [her], in front of several employees." He also allegedly entered Gilleland's office on several occasions and made gestures as if he wished her to perform oral sodomy. When she protested and cried, he allegedly laughed. In fact, Gilleland alleged that "[o]ne of . . . O'Dell's favorite pastimes was to do whatever mean or harassing thing to [Gilleland] that he could think of in order to cause [her] to cry in her office and in front of people." Based on these as well as several other factual allegations of outrageously crude and lascivious conduct, Gilleland sought damages for claims of assault, battery, intentional infliction of emotional distress, sexual harassment, and negligent retention of employment.

O'Dell sought coverage from St. Paul, the insurer who had issued commercial general liability coverage to O'Dell's companies, under three successive policies. St. Paul refused to defend the lawsuit on the grounds that the damages sought by Gilleland were not covered and that certain exclusions precluded coverage. O'Dell filed this declaratory judgment action to determine the obligations of the parties with respect to the policies. O'Dell appeals the trial court's ruling that St. Paul was not obligated to defend the lawsuit.

"An insurer's duty to defend is determined by the insurance contract; and since the contract obligates the insurer to defend claims asserting liability under the policy, even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted." (Citations and punctuation omitted.) *Brayman v. Allstate Ins. Co.*; 212 Ga. App. 96 (1) (441 SE2d 285) (1994). See also *Al Who Enterprises v. Capitol Indem. Corp.*, 217 Ga. App. 423, 426 (1) (457 SE2d 696) (1995). The critical issue is "whether the suit alleges a claim that is covered by the policy. [Cit.]" *Cantrell v. Allstate Ins. Co.*, 202 Ga. App. 859, 860 (415 SE2d 711) (1992). We therefore must compare the terms of the insurance contract to the allegations in the complaint to determine whether the Gilleland lawsuit seeks damages for covered claims.

St. Paul's duty to defend is described in the policies as follows: "Right and duty to defend. We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person." The policies recite that they cover four types of injuries: (1) bodily injury; (2) property damage; (3) personal injury; and (4) advertising injury. It appears to be undisputed that the claims for which O'Dell seeks coverage are Gilleland's claims for bodily and personal injury.

1. Bodily injury. In the policies effective from March 15, 1991 through March 15, 1993, bodily injury is defined as "physical harm, including sickness or disease, to the health of others. It also includes death resulting at any time from such harm." The successor policy, in effect eight days before Gilleland's termination, defined bodily injury as "any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that result at any time from such physical harm, sickness or disease: mental anguish injury or illness; emotional distress; care, loss of services, or death." In Georgia, "used in an insurance policy, the term 'bodily injury' means just that — 'bodily injury.' It pertains to physical injury to the body. It does not include non-physical, emotional or mental harm. And it cannot be equated with a broader term 'personal injury.' " (Citations and punctuation omitted.) *Brayman*, supra, 212 Ga. App. at 96-97 (1). Although Gilleland alleged emotional distress in her lawsuit, she did not allege that such distress resulted from

*physical* harm or injury. Consequently, those allegations do not constitute bodily injury as defined by the policies. See *Brayman*, supra; *Wilmington Island Constr. Co. v. Cincinnati Ins. Co.*, 179 Ga. App. 477, 479 (2) (347 SE2d 308) (1986).

Moreover, even assuming that Gilleland's complaint alleged bodily injury as contemplated by the policies, all policies recite that coverage applies if bodily injury arises out of an "event." They define event as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis supplied.) Although the policies do not define accident, "in Georgia an accident is defined as an event which takes place without one's foresight or expectation or design. An accident refers to an unexpected happening rather than one occurring through intention or design. Acts could not be unexpected unless they were accidental." (Citations and punctuation omitted.) *Southern Guaranty Ins. Co. v. Phillips*, 220 Ga. App. 461, 462 (1) (469 SE2d 227) (1996). See also *Brayman*, supra at 97 (1). Given the allegations that O'Dell committed sexual harassment and assault and battery, which are by their nature intentional, we cannot conclude that bodily injury, if any, was caused by an accident. See id.; *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 611 (373 SE2d 671) (1988). Consequently, the allegations of bodily injury do not fall within the policies' definitions of "events" and are not covered.

O'Dell also claims that St. Paul must defend the lawsuit on behalf of DRACS and DRA because Gilleland alleged facts on which a cause of action for negligent retention of O'Dell could be based. We note initially that the policy does not recite that it covers losses due to negligent retention. But even if this were true, the complaint does not allege that Gilleland suffered bodily injuries, and even assuming she *did* suffer bodily injuries, she did not allege that those injuries were caused by an accident and thus were brought about by an "event."

2. Personal injury. The policies all recite that St. Paul will provide coverage for the following specific personal injuries that result from business activities: "false arrest, detention, or imprisonment; malicious prosecution; wrongful entry or wrongful eviction; libel or slander; written or spoken material made public which belittles the products or work of others; written or spoken material made public which violates an individual's right of privacy."[1] Although Gilleland did not specifically make a claim that O'Dell committed any of these

---

[1] In the third policy, personal injury offenses are almost identically defined, except for the language describing the last two enumerated offenses. The third policy recites that personal injuries include "making known to any person or organization written or spoken material that belittles the products, work or completed work of others [and] making known to any

offenses, O'Dell argues that the lawsuit nevertheless alleged facts on which a cause of action for slander (which is a covered personal injury) *could* be based. According to O'Dell, "recovery [for slander] could have been possible under an unstated cause of action based on the facts that were alleged."

We do not reach here the issue of whether an insurer is obligated to defend an as yet "unstated cause of action." *Even assuming* that the complaint *somehow* provided notice to St. Paul that Gilleland raised a slander claim, Gilleland's lawsuit was filed more than one year after her employment was terminated on March 23, 1993. An action for slander was therefore barred by the one year statute of limitation pursuant to OCGA § 9-3-33.

O'Dell argues that a statute of limitation defense is an affirmative defense and is waived if not raised in an answer. The defense *is* indeed affirmative in nature, OCGA § 9-11-8 (c), but St. Paul has not waived it. "The purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense. If it is not pleaded it is generally held that the defense is waived, *but if it is raised by motion, or by special plea in connection with the answer or by motion for summary judgment there is no waiver.*" (Citations and punctuation omitted; emphasis supplied.) *Brown v. Moseley*, 175 Ga. App. 282, 283 (1) (333 SE2d 162) (1985). See also *Fortier v. Ramsey*, 136 Ga. App. 203, 206 (2) (220 SE2d 753) (1975) (statute of limitation can be raised in opposition to motion for summary judgment). St. Paul raised the statute of limitation defense at the first practical opportunity — in its response to O'Dell's motion for summary judgment, in which O'Dell raised the issue that facts appeared in the Gilleland lawsuit supporting an action for slander.[2] The slander issue was first *actually* raised by O'Dell in connection with the parties' respective motions for summary judgment. Since St. Paul immediately responded to that issue after it was raised by O'Dell, O'Dell cannot claim that he was surprised, and the purpose behind the rule that affirmative defenses be pled was met. The lawsuit was filed after the statute of limitation ran on any slander claim, and St. Paul has no duty to defend against Gilleland's lawsuit. Accordingly, the trial court did not err in granting St. Paul's motion for summary judgment and denying O'Dell's motion for summary judgment.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

---

person or organization written or spoken material that violates an individual's right of privacy."

[2] We note that in connection with this action for declaratory judgment, O'Dell requested that Gilleland's lawsuit be enjoined. The trial court honored that request by enjoining Gilleland from further action in her lawsuit by order dated February 17, 1995.

582

Decided November 18, 1996.

*James E. Goodman*, for appellants.

*Tittsworth, Grabbe & Spillers, Jennie E. Rogers, Stokes, Lazarus & Carmichael, William K. Carmichael, Michael J. Ernst*, for appellees.