SCI LIQUIDATING CORPORATION f.k.a. Sunrise Carpet Industries, Inc., Plaintiff-Appellee,

v.

HARTFORD FIRE INSURANCE COMPANY a Connecticut Corporation, Hartford Casualty Insurance Company, a Connecticut Corporation, Defendants-Appellants.

No. 98-9069.

United States Court of Appeals,

Eleventh Circuit.

July 20, 1999.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:97-cv-124-HLM), Harold L. Murphy, Judge.

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

HULL, Circuit Judge:

Hartford Fire Insurance Company and Hartford Casualty Insurance Company appeal the district court's summary judgment order finding insurance coverage exists for sexual harassment claims made against their insured, SCI Liquidating Corporation. After review, we reverse.

## I. BACKGROUND

On October 3, 1994, three former female employees sued Sunrise Carpet Industries, Inc. ("Sunrise") and Larry Hankins, one of Sunrise's managers, alleging causes of action for sexual harassment, retaliation, assault, battery, intentional infliction of emotional distress, and negligent hiring and retention. SCI Liquidating Corporation ("SCI") is the successor to Sunrise.

For the relevant time period, Hartford Fire Insurance Company ("Hartford") had issued to Sunrise a commercial general liability insurance policy (the "CGL policy") and Hartford Casualty Insurance Company ("Hartford Casualty") had issued a separate umbrella liability insurance policy (the "Umbrella policy"). Hartford and Hartford Casualty initially defended the lawsuit under a reservation of rights. On February 17, 1995, Hartford and Hartford Casualty denied coverage and SCI was forced to retain counsel. A jury verdict

for four thousand dollars was rendered in the employees' favor against SCI.[1] The trial court also awarded attorneys' fees against SCI. After negotiations, on March 5, 1997, SCI paid a total of $81,109.18 to the employees to satisfy the verdict and award of attorneys' fees, costs, and interest. SCI incurred its own attorneys' fees and expenses of $111,222.03 in defending the employees' lawsuit.

On May 1, 1997, SCI filed this coverage case against Hartford and Hartford Casualty. SCI seeks to recover the attorneys' fees for its defense counsel as well as the money SCI paid to the plaintiff employees in the underlying lawsuit, plus interest. All parties filed motions for summary judgment. On January 26, 1998, the district court granted SCI's motion and denied Hartford's and Hartford Casualty's joint motion, finding that the insurance policies covered the underlying sexual harassment lawsuit. On August 12, 1998, the district court entered final judgment in SCI's favor for $187,972.21 plus prejudgment interest against the Defendants jointly and severally, for an additional $4,359 plus prejudgment interest against Hartford, and for $3,384 in costs against both Defendants.

On August 17, 1998, Hartford and Hartford Casualty filed a joint Notice of Appeal. On appeal, all parties agree that no material facts are in dispute regarding the insurance coverage issues here.

## II. STANDARD OF REVIEW

We review *de novo* the district court's rulings on motions for summary judgment. *Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.1999).

## III. DISCUSSION

*A.    CGL Policy*

Because this appeal turns on the policy language, we first review in detail the two policies in issue.

Coverage A of the CGL policy provides for coverage of "bodily injury" liability that results from an "occurrence":

*1.    Insuring Agreement.*

---

[1]The general verdict did not specify upon which claims liability was based.

2

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.

        ...

b.      This insurance applies to "bodily injury" ... only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;".

The CGL policy defines "occurrence" in section V and "bodily injury" in an endorsement, as follows:

9.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

        ...

        17. MENTAL ANGUISH

        The definition of "bodily injury" in the DEFINITIONS section is replaced by the following:

        "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these.

However, the CGL policy excludes coverage for "bodily injury" in several circumstances, such as:

        SECTION I COVERAGES

        COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

        ...

        2. Exclusions.

                This insurance does not apply to:

a.      "Bodily injury" ... expected or intended from the standpoint of the insured.

                ...

                e. "Bodily injury" to:

(1)     An employee of the insured arising out of and in the course of employment by the insured;  ...

                This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity;

3

In addition to "bodily injury", the CGL policy, in Coverage B, covers "personal injury" liability caused by an "offense" arising out of the insured's business:

1.    *Insuring Agreement*

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" ... to which this coverage part applies.  We will have the right and duty to defend any "suit" seeking those damages.

          ...

b.    This insurance applies to:

(1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by or for you;

The CGL policy defines "personal injury" to cover one or more of the following five offenses:

10.    "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a.    False arrest, detention, or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;  or

e.    Oral or written publication of material that violates a person's right of privacy.

An endorsement to the CGL policy expands the definition of "personal injury" to include certain discrimination, but only if that discrimination is unrelated to the employment:

1.    *PERSONAL INJURY*

a.    The following is added to the "personal injury" definition:

f.    Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1)    Not done intentionally by or at the direction of:

          (a) The insured;  or

4

(b) Any executive officer, director, stockholder, partner or member of the insured; and

(2)     Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

*B.      Umbrella Policy*

The Umbrella policy also provides coverage for both "bodily injury" and "personal injury", and

requires both types of injury to be caused by an "occurrence" in order to be covered:

*A.      Umbrella Liability Insurance*

We will pay those sums that the "insured" must legally pay as "damages" in excess of the "underlying insurance," or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies caused by an "occurrence."

The Umbrella policy's definitions of "bodily injury" and "personal injury" are different from those in the CGL

policy;  plus, the Umbrella policy defines "occurrence" differently for "bodily injury" versus "personal

injury," as follows:

C.      "Bodily injury" means bodily injury, sickness, or disease sustained by a person which occurs during the "policy period," including death resulting from any of these at any time.

        ...

H.      "Occurrence" means

1.      With respect to "bodily injury" or "property damage:" an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property;  and

2.      With respect to "advertising injury" and "personal injury" respectively:  an offense described in one of the numbered subdivisions of those definitions in this policy.

I.      "Personal injury" means injury, other than "advertising injury" or "bodily injury," arising out of one or more of the following offenses committed during the "policy period" in the conduct of your business:

1.      False arrest, detention or imprisonment;

2.      Malicious prosecution;

5

3. The wrongful eviction from, wrongful entry into, or invasion of the [sic] right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of his or her owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication of material that violates a person's right of privacy; or

6. Discrimination or humiliation not intentionally committed by or at the direction of the "insured" or any "executive officer," director, stockholder, partner or member thereof, but only with respect to injury to the feelings or reputation of a natural person.

Lastly, the Umbrella policy excludes coverage for "bodily injury" and "personal injury" to employees "arising out of and in the course of their employment":

*B.     Exclusions*

This policy does not apply:

...

16. With respect to coverage afforded any of your employees to "bodily injury" or "personal injury:"

a. To other employees arising out of and in the course of their employment;

b. To you or, if you are a partnership or joint venture, any of your partners or members; or

c. Arising out of the providing or failing to provide professional health care services.

Even if the employees' claims involve "bodily injury" or "personal injury" caused by an "occurrence", the Defendants contend that this exclusion precludes coverage.

*C.     Georgia Law*

In this diversity action, Georgia's substantive law governs the interpretation of the CGL and Umbrella policies here. *Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 819 (11th Cir.1985). In determining insurance coverage, we look to the allegations in the complaint in the underlying lawsuit and to the terms of the insurance policies. *Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau,* 144 F.3d 1372, 1375 (11th Cir.1998); *Great Am. Ins. Co. v. McKemie,* 244 Ga. 84, 85-86, 259 S.E.2d 39 (1979);

6

*Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. To31504670 & To31504671,* 268 Ga. 561, 491 S.E.2d 337 (1997).

Ambiguities in insurance contracts are construed against the insurer. *Claussen v. Aetna Cas. & Sur. Co.,* 259 Ga. 333, 334-35, 380 S.E.2d 686 (1989). In contrast, "unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." *Continental Cas. Co. v. HSI Fin. Servs., Inc.,* 266 Ga. 260, 262, 466 S.E.2d 4 (1996). "[E]xclusions from coverage sought to be invoked must be strictly construed." *Tifton Mach. Works, Inc. v. Colony Ins. Co.,* 224 Ga.App. 19, 20, 480 S.E.2d 37 (1996).

We also review several Georgia cases involving similar claims and similar policy terms. In *Presidential Hotel v. Canal Ins. Co.,* 188 Ga.App. 609, 373 S.E.2d 671 (1988), the Georgia Court of Appeals held that a corporate defendant was not entitled to insurance coverage for a sexual harassment claim. In that case, the hotel's employees in the underlying sexual harassment lawsuit alleged that their supervisor, acting individually and as an agent of the hotel, used his position and authority to sexually harass them. 188 Ga.App. at 609. The employees alleged that they were damaged both mentally and monetarily. *Id.* Similar to the CGL and Umbrella policies here, the insurance policy in *Presidential Hotel* covered "bodily injury" which resulted from an "occurrence". *Id.* at 610, 373 S.E.2d 671. The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *Id.* The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.*

The Georgia Court of Appeals held that the employees did not allege claims seeking damages for "bodily injury" under the policy because they sought only monetary and "mental damages", and not damages for actual physical harm. *Id.* at 611, 373 S.E.2d 671. In addition, the Georgia Court held that even if the

7

employees asserted claims for "bodily injury", the intentional conduct of sexual harassment is not an "occurrence" because that term is defined as an accident resulting in bodily injury unintended by the insured:

> Assuming, arguendo, plaintiffs do assert claims for bodily injury, we must conclude nevertheless that the policy issued by [the defendant insurer] does not afford coverage to the [insured]. The policy covers damages for bodily injury resulting from an "occurrence." That term is defined in the policy as an "accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Thus, intentional acts are not covered under the policy. *Georgia Farm Bureau, etc., Ins. Co. v. Meriwether,* 169 Ga.App. 363, 312 S.E.2d 823 (1983); *Georgia Farm Bureau, etc., Ins. Co. v. Ray,* 148 Ga.App. 85, 251 S.E.2d 34 (1978).
>
> It is alleged by plaintiffs that the hotel, by and through its agents, sexually harassed and defrauded plaintiffs. Given these allegations of intentional conduct, it cannot be said that any resulting bodily injury to plaintiffs was unintended. Accordingly, the assertions of liability by plaintiffs do not fall with the policy's definition of an "occurrence." *Georgia Farm Bureau, etc., Ins. Co. v. Meriwether,* 169 Ga.App. 363, 312 S.E.2d 823.

188 Ga.App. at 611, 373 S.E.2d 671.

In *O'Dell v. St. Paul Fire & Marine Ins. Co.,* 223 Ga.App. 578, 478 S.E.2d 418 (1996), the Georgia Court of Appeals found that similar liability policies did not cover a lawsuit by a company's employee for sexual harassment, assault, battery, intentional infliction of emotional distress, and negligent retention of employment. In *O'Dell,* the Georgia Court found that these allegations did not constitute "bodily injury" under the liability policies, and that intentional sexual harassment does not constitute a triggering "event" defined as an "accident" under the insurance policies:

> Moreover, even assuming that Gilleland's complaint alleged bodily injury as contemplated by the policies, all policies recite that coverage applies if bodily injury arises out of an "event." They define event as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ... Although the policies do not define accident, "in Georgia an accident is defined as an event which takes place without one's foresight or expectation or design. An accident refers to an unexpected happening rather than one occurring through intention or design. Acts could not be unexpected unless they were accidental." [Citations and punctuation omitted.] Given the allegations that O'Dell committed sexual harassment and assault and battery, which are by their nature intentional, we cannot conclude that bodily injury, if any, was caused by an accident. [Citation omitted.] Consequently, the allegations of bodily injury do not fall within the policies' definitions of "events" and are not covered.

8

223 Ga.App. at 580, 478 S.E.2d 418. The Georgia Court concluded that the plaintiff's negligent retention claims also were not covered, because, among other things, the plaintiff "did not allege that those injuries were caused by an accident and thus were brought about by an 'event.' " *Id.*

In the instant case, the district court relied on *Crook v. Georgia Farm Bureau Mut. Ins. Co.,* 207 Ga.App. 614, 428 S.E.2d 802 (1993), which involved coverage for a wrongful death claim under a homeowner's insurance policy. The plaintiffs in the underlying lawsuit sued the insured, Crook, for the wrongful death of their son, who intentionally committed acts causing his own death. The homeowner's insurance policy obligated the insurer to defend Crook in a lawsuit to recover damages for personal injury that was "caused by an occurrence." 207 Ga.App. at 614. The policy defined "occurrence" as "an accident", but "accident" was not otherwise defined. *Id.* The Georgia Court found that " '[a]ccident' means an event which takes place without one's foresight or expectation or design." *Id.* Using this definition, the Georgia Court reasoned that the lawsuit against the insured Crook was covered, as the deceased's actions did not take place within the insured's "foresight or expectation or design":

> In the underlying tort action, there are no allegations that Crook intentionally caused the death with "foresight or expectation or design." Indeed, the undisputed evidence of record shows that the death occurred entirely without Crook's intentional "foresight or expectation or design." Accordingly, insofar as Crook, in his capacity as an insured, is concerned, the death of the [plaintiffs'] son was clearly an "accident," because it was an unintentional event which took place without his "foresight or expectation or design."
>
> That the [plaintiffs'] son may have caused his own death is obviously not a ground for the Insurer's present refusal to defend Crook in the underlying tort action.

207 Ga.App. at 614-15. We observe that the parties did not cite the *Presidential Hotel* case before the district court, which appears why the district court relied heavily on *Crook*. We now apply this Georgia law to this case.

D.    *CGL Policy*

*Presidential Hotel* and *O'Dell* answer directly the coverage issues under SCI's CGL policy. Under *Presidential Hotel* and *O'Dell,* allegations of intentional sexual harassment, assault, battery, and negligent

9

retention do not constitute an "occurrence", as defined by SCI's CGL policy. The policies in both *Presidential Hotel* and here define "occurrence" as "an accident", and do not cover the intentional conduct of Hankins.

SCI argues that *Presidential Hotel* should be read with *Crook,* and that, together, these cases indicate that the allegations in an underlying lawsuit should be observed from the viewpoint of the insured, as opposed to the actor. There is some difficulty in reconciling the different approaches taken in *Crook* and *Presidential Hotel.* However, we find *Presidential Hotel* squarely discusses sexual harassment allegations in the context of a liability policy where "occurrence" is defined as "an accident," just as in the CGL policy here, and thus, we must follow it. Moreover, the *Presidential Hotel* policy includes additional language in its definition of "occurrence", specifying that the "accident" must "result[ ] in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Despite this language, the Georgia court explicitly ruled that there was no occurrence with regard to the hotel's insurance policy, where a supervisor had allegedly sexually harassed other employees. Thus, even if viewed from the standpoint of the insured, *Presidential Hotel* holds that there is still no "occurrence". Finally, *Crook* is distinguishable, in that it involves coverage issues for a wrongful death claim under a homeowner's policy against the insured homeowner, as opposed to a liability policy and the actions of an employee of the insured. Because the allegations of the underlying sexual harassment lawsuit are not an "occurrence" under the CGL policy, that lawsuit was not covered under the CGL policy's coverage for "bodily injury" caused by an "occurrence".

Furthermore, the parties do not contend that the allegations of the underlying lawsuit come within the definition of "personal injury" in the CGL policy. We note that the endorsement to the CGL policy expands the definition of "personal injury" to include certain discrimination, but denies coverage where the discrimination is "directly or indirectly related to the employment ... of any person or persons by any insured."

Accordingly, we hold that the CGL policy nowhere provides SCI coverage for the underlying lawsuit.

10

*E.     Umbrella Policy*

Coverage for "bodily injury" under the Umbrella policy is also limited to "occurrences" defined exactly as the liability policy in the *Presidential Hotel* decision. Accordingly, under the above reasoning, we hold that the Umbrella policy's "bodily injury" provisions do not provide coverage to SCI for the underlying sexual harassment lawsuit.

However, the Umbrella policy defines "personal injury" differently than the CGL policy. Specifically, the Umbrella policy does not as strictly limit the range of discrimination included in its definition of "personal injury." The Umbrella policy includes as "personal injury":

> Discrimination or humiliation not intentionally committed by or at the direction of the "insured" or any "executive officer," director, stockholder, partner or member thereof, but only with respect to injury to the feelings or reputation of a natural person.

The employees' complaint in the underlying lawsuit alleges discrimination, among other things, as follows:

> 49. The unwelcome and offensive actions by defendant Hankins against plaintiffs and other Sunrise employee [sic], which actions, Sunrise knew or should have known of, created a sexually-charged, hostile working environment which substantially affected plaintiffs' conditions of employment and discriminated against plaintiffs because of their sex in violation of Title VII.

> 50. Defendant Hankins made known to plaintiffs that if they would succumb to his sexual solicitations and advances they would receive preferential treatment at the workplace. Hankins' behavior in making plaintiffs' submission to his advances an express and implied condition of employment constitutes *quid pro quo* sexual harassment against plaintiffs because of their sex in violation of Title VII, for which both Sunrise and Hankins are liable.

The employees' allegations of discrimination under Title VII appear to be covered by the plain language of the sixth offense listed as "personal injury" in the Umbrella policy.[2]

---

[2]We note that discrimination "intentionally committed by or at the direction of the 'insured' " would not fit within the definition of "personal injury". However, the parties do not argue that Hankins, the alleged harassing supervisor, would be an "insured" under the terms of the Umbrella policy. Further, the Umbrella policy limits its definition of "insured" to "employees, other than your 'executive officers,' but only for acts within the scope of their employment by you." We note that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998); *see also, Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2286-90, 141 L.Ed.2d 662 (1998); *B.C.B. Co. v. Troutman,* 200 Ga.App. 671, 672, 409 S.E.2d 218 (1991).

In addition, the Umbrella policy's definition of "occurrence" with respect to "personal injury" is different from the definition of "occurrence" with respect to "bodily injury". "Occurrence" with respect to "personal injury" simply refers back to the six listed offenses within the definition of "personal injury": " 'Occurrence' means ... With respect to ... 'personal injury' ... an offense described in one of the numbered subdivisions of [that] definition[ ] in this policy." Accordingly, as plaintiffs' claim for discrimination and sexual harassment under Title VII is included within the offenses listed in the definition of "personal injury", the Title VII claim also qualifies as an "occurrence" for purposes of "personal injury" under the Umbrella policy.

However, the Umbrella policy then excludes from coverage "personal injury" caused by employees "arising out of and in the course of their employment." Thus, the question arises regarding whether, for purposes of a liability insurance policy, sexual harassment by a coworker is conduct "arising out of and in the course of their employment." No Georgia Supreme Court or Georgia Court of Appeals decision has decided this issue.

A Georgia workers' compensation decision has held that injuries from sexual harassment by another employee occur "in the course of" employment, but do not arise "out of" that employment, and thus an employee's sexual harassment claim is not barred by the Workers' Compensation Act. *Murphy v. ARA Servs., Inc.,* 164 Ga.App. 859, 861-62, 298 S.E.2d 528 (1982); *see also* O.C.G.A. § 34-9-1(4). In *Murphy,* the Georgia Court of Appeals reasoned that " '[a]n injury arises in the course of employment, ... when it occurs within the period of employment, at a place where the employee may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto.' " *Id.* at 861, 298 S.E.2d 528 (quoting *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga.App. 682, 118 S.E. 786 (1923)). The Georgia Court

---

The parties also do not argue that we need to disaggregate those claims in the underlying sexual harassment complaint which appear to be covered from those which are not. Therefore, as the employees' Title VII discrimination claim appears to be covered by the Umbrella policy, we need not discuss the employees' assault, battery, intentional infliction of emotional distress, or negligent hiring and retention claims.

12

found, however, that injuries caused by sexual harassment do not arise "out of" the employment because the "causative danger of the injury" was not "reasonably incidental to the character of [the plaintiff's] employment." *Id.* at 862, 298 S.E.2d 528. In 1992, the Georgia Court of Appeals cited *Murphy* with approval in *Rogers v. Carmike Cinemas, Inc.,* 211 Ga.App. 427, 439 S.E.2d 663 (1993), and held without discussion that the sexual harassment injuries there did not arise "out of" the plaintiff's employment. 211 Ga.App. at 429, 439 S.E.2d 663.

Nonetheless, under Georgia law, the result in the workers' compensation context may be different from the liability insurance context generally. *See Jones v. Aldrich Co., Inc.,* 188 Ga.App. 581, 584, 373 S.E.2d 649 (1988) (pointing out that workers' compensation presents its own problems and rules regarding "scope of employment"). In fact, one state supreme court has specifically discussed why this same language in an insurance exclusion necessarily must be read differently than similar language in a state workers' compensation act and why it excludes injuries from sexual harassment claims. *McLeod v. Tecorp Int'l Ltd.,* 318 Or. 208, 865 P.2d 1283, 1286-88 (1993). In *McLeod,* the Oregon Supreme Court observed that general liability policies include a separate exclusion for workers' compensation claims and that construing the "arising out of and in the course of employment" exclusion to have the same meaning as the workers' compensation exclusion effectively reads a provision out of the policy. SCI's Umbrella policy has the same exclusion for workers' compensation claims as the policy in *McLeod,* and thus the issue arises regarding how the two exclusions should be read together.

In addition, other jurisdictions have held that sexual harassment by a coworker at the workplace necessarily "arises out of and in the course of employment", and have therefore excluded coverage of sexual harassment claims based on the same exclusion present here. *See, e.g., Aberdeen Ins. Co. v. Bovee,* 777 S.W.2d 442, 444 (Tex.Ct.App.1989); *Western Heritage Ins. Co. v. Magic Years Learning Ctrs. and Child Care, Inc.,* 45 F.3d 85, 89-90 (5th Cir.1995) (applying Texas law). Also, even though intentional sexual harassment may not be within "the scope of employment," a sexual harassment claim under Title VII may

13

arguably arise "out of" employment. Indeed, to be viable, a sexual harassment claim under Title VII requires an employment relationship between the supervisor harasser and injured employee.

Thus, regarding the Umbrella policy, we face an issue of unsettled Georgia law that is determinative of the final issue in this appeal. We, therefore, certify this question for resolution by the Georgia Supreme Court.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9 (1994).

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

Because this appeal depends on resolution of this question of unsettled Georgia law, we certify the following question to the Supreme Court of Georgia:

DOES SEXUAL HARASSMENT OR RETALIATION BY A SUPERVISOR TRIGGER EXCLUSION SIXTEEN ON PAGE THREE OF THE UMBRELLA INSURANCE POLICY IN THIS CASE, WHERE THE INSURANCE POLICY EXCLUDES: "COVERAGE AFFORDED ANY OF [THE INSURED'S] EMPLOYEES TO 'BODILY INJURY' OR 'PERSONAL INJURY' ... TO OTHER EMPLOYEES ARISING OUT OF AND IN THE COURSE OF THEIR EMPLOYMENT"?

The phrasing used in this certified question should not restrict the Supreme Court's consideration of the problem posed by this case. This extends to the Supreme Court's restatement of the issues and the manner in which the answer is given. In order to assist the Supreme Court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia.

REVERSED in part; QUESTION CERTIFIED.

14