**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 99-10983

_____

D.C. Docket No. 96-8268-CV-WDF

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 20, 2000
THOMAS K. KAHN
CLERK

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,

Plaintiffs-Appellees-
Cross-Appellants,

versus

VICTOR GINSBERG, ELAINE A. SCARFO,

Defendants-Appellants-
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(December 20, 2000)

Before ANDERSON, Chief Judge, DUBINA and SMITH[*], Circuit Judges.

PER CURIAM:

Certification from The United States Court of Appeals for the Eleventh Circuit

---

[*]  Honorable Edward S. Smith, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

to the Supreme Court of Florida.

This declaratory judgment action presents important issues of Florida law that have not been directly addressed by the Supreme Court of Florida, presenting unsettled questions of state law whose answers may be dispositive of the dispute between the parties. Accordingly, we believe the issues are appropriate for resolution by Florida's highest court and defer our decision in this case pending certification of the issues to the Supreme Court of Florida.

*Statement of the Issues*

Whether allegations of unwelcome conduct, including touching and sexually offensive comments, state a cause of action for the Florida common law tort law claim of invasion of privacy. Whether such allegations constitute an "occurrence" as that term is understood by Florida law for purposes of insurance policy coverage. Whether such allegations, alleged to have occurred during an employer-employee relationship, both in and out of the workplace, fall within the business exception to policy coverage as that exception is applied under Florida law. Whether claims of intentional invasions of privacy are excluded from coverage by the intentional acts exception to coverage when the policy specifically provides coverage for invasions of privacy.

*Facts and Procedural History*

From November 1991 until September 1992, Elaine A. Scarfo was employed as a secretary for various Florida corporations owned by Victor Ginsberg. Prior to that time, from approximately November 1987 until November 1991, Scarfo worked for her husband without pay at Ginsberg's corporation. On September 18, 1992, Scarfo was terminated. In 1993, Scarfo filed a federal civil rights action against Ginsberg in the United States District Court for the Southern District of Florida, alleging that from approximately 1988 and throughout her employment, Ginsberg subjected her to unwelcome offensive conduct, including physical touching and comments of a sexual nature. In addition, Scarfo's complaint included common law tort claims for battery, intentional infliction of emotional distress, and invasion of privacy.

During the time of the actions alleged by Scarfo, Ginsberg was covered under a Personal Umbrella Policy issued by Allstate, which applies to an "occurrence" anywhere in the world while the insurance is in force. In 1995, Ginsberg tendered the defense of the action to Allstate, demanding that Allstate indemnify him for any potential liability.

Allstate, in providing a defense to the actions under a reservation of rights, filed a declaratory judgment action seeking a determination whether Allstate's

policies cover the claims alleged by Scarfo against Ginsberg.[1] In 1997, the district court dismissed Scarfo's federal civil rights action on jurisdictional grounds, and dismissed Scarfo's state law claims without prejudice. The Eleventh Circuit affirmed the dismissal in <u>Scarfo v. Ginsberg</u>, 175 F.3d 957 (11th Cir. 1999). Scarfo re-filed her claims against Ginsberg in the state court as common law torts.

The Personal Umbrella Policy provides as follows:

Coverage – When we Pay
Allstate will pay when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence.

The policy defines "Personal Injury" as follows:

(a) bodily injury, sickness, disease or death of any person. Bodily injury includes disability, shock, mental anguish and mental injury.
(b) false arrest; false imprisonment; wrongful detention; wrongful entry; invasion of rights; invasion of occupancy; or malicious prosecution;
(c) libel, slander, misrepresentation; humiliation; defamation of character; <u>invasion of rights of privacy</u>; and
(d) discrimination and violation of civil rights, where recovery is permitted by law. Fines and penalties imposed by law are not included.

(Emphasis added).

The parties filed cross motions for summary judgment, raising the question whether Scarfo properly alleged an invasion of privacy, thereby triggering Allstate's

---

[1] Allstate also issued a Deluxe Plus Homeowners Policy to Victor Ginsberg. Ginsberg does not contend that there is a duty to defend under that policy.

duty to defend. On April 21, 1999, the district court issued an order granting summary judgment in favor of Allstate. The district court concluded that Scarfo's allegations of unwelcome conduct did not state a cause of action for invasion of privacy under the relevant category of that tort identified by the Supreme Court of Florida as "intrusion -- physically or electronically intruding into one's private quarters." Agency for Health Care Admin. v. Assoc. Indus. Of Florida, Inc., 678 So. 2d 1239, 1252 (Fla. 1996), cert. denied, 117 S. Ct. 1245 (1997).

Because the Supreme Court of Florida had never directly considered whether intrusion into "one's private quarters" included unwelcome conduct directed to one's physical person, the district court looked to the Florida intermediate courts for guidance and noted that the intermediate courts appeared divided on that question. The district court concluded that the approach taken by Florida's Fourth District Court of Appeal was more in accord with the category of intrusion identified by the Supreme Court of Florida. Thus, based on the Fourth District's rationale in Guin v. City of Rivera Beach, 388 So. 2d 604 (Fla. 4th D.C.A. 1980), the district court concluded that the invasion of privacy tort could not be "construed so broadly as to include a battery occurring in the workplace absent an intrusion into a place where the victim has a reasonable expectation of privacy." The district court held that Allstate had no duty to defend, and granted summary judgment in favor of Allstate. This appeal and cross-appeal followed.

5

*Duty to Defend*

The threshold issue in this case is whether the acts alleged by Scarfo implicate Allstate's duty to defend Ginsberg. While Scarfo cast her allegations in the form of an invasion of privacy claim, Allstate asserts that Florida courts have defined the tort of invasion of privacy in such a way that excludes the alleged actions forming the basis of Scarfo's claim. Additionally, the parties dispute whether the actions alleged by Scarfo may be considered an "occurrence" as required for coverage under Ginsberg's policy with Allstate.

Because the Florida Supreme Court has not addressed the question whether the type of acts alleged by Scarfo fall within the invasion of privacy tort, the parties rely on different approaches taken by Florida intermediate courts. Scarfo claims that the Florida intermediate courts have explicitly recognized that the tort of invasion of privacy includes a physical intrusion to the plaintiff's body, relying on pronouncements from the First and Third Appellate Districts. See Hennagan v. Dept. of Safety and Motor Vehicles, 467 So.2d 748, 750 (Fla. 1st Dist. Ct. App. 1985) (reversing summary judgment on a claim of invasion of privacy based upon allegations of unwelcome touching and sexual molestation); State Farm Fire & Cas. Co. v. Compupay, Inc., 654 So.2d 944, 949 (Fla. 3d Dist. Ct. App. 1995) (noting that invasion of privacy includes touching of plaintiff's person in undesired or offensive manner). In addition, Ginsberg, relying on a previous opinion of this Circuit, contends that Florida law acknowledges

6

unwanted sexual comments as a basis for invasion of privacy. See Steele v. Offshore Shipbuilding Inc., 867 F.2d 1311, 1315 (11th Cir. 1989) (Florida action for invasion of privacy based on sexually related comments allowed to proceed when the comments were published to a large number of people). Together, Scarfo and Ginsberg construe these opinions as supporting a broad definition of invasion of privacy which would include the actions and comments alleged by Scarfo.

Allstate asserts that the tort as recognized by Florida is much more limited, relying on pronouncements by the Second and Fourth Appellate Districts. See Ponton v. Scarfone, 468 So.2d 1009, 1010 (Fla. 2d Dist. Ct. App.), review denied, 478 So.2d 54 (Fla. 1985) (employer's utterances designed to induce employee into a sexual relationship did not fall within the zone of conduct establishing an invasion of privacy); Guin v. City if Riviera Beach, 388 So.2d 604, 606 (Fla. 4th Dist. Ct. App. 1980) ("The tort of invasion of privacy is ordinarily considered to encompass four categories, one of which consists of 'intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home ...'"). Allstate interprets these decisions, along with the Florida Supreme Court's categorization in Agency for Health Care Administration, as limiting the intrusion element of invasion of privacy to intrusions of seclusion and excluding intrusions of the body.

The parties also dispute whether the acts alleged by Scarfo constitute an "occurrence" as that term is used in the policy. The policy expressly limits coverage

to a policy holder's legal liability for property damage or personal injury arising from an "occurrence," which the policy defines, in relevant part, as "an accident or a continuous exposure to conditions." Allstate claims that definition restricts coverage to accidental or inadvertent incidents and that the intentional acts alleged by Scarfo do not fit within that description. Ginsberg responds that the acts alleged by Scarfo constitute a continuous exposure to conditions, thus falling within the policy's definition of "occurrence." Ginsberg additionally claims that, even if the policy generally was limited to accidents, any such limitation is specifically waived for invasions of privacy, which are listed as an exception to the intentional acts exclusion, as discussed below.

*Exclusions to Coverage*

Assuming that Scarfo's allegations trigger Allstate's duty to defend Ginsberg, the parties further dispute whether the allegations are excluded from coverage under the policy's exceptions for business activities and intentional acts. The Supreme Court of Florida analyzed comparable exceptions in the context of child molestation claims alleged against operators of a home day-care center. See Landis v. Allstate Ins. Co., 546 So. 2d 1051 (Fla. 1989). In that case, the court found that the crux of the lawsuit was the day-care operators' negligent care and supervision of the children, which related to the general act of babysitting and was therefore excluded from coverage by the business pursuits exclusion in the defendants' homeowners insurance policy. See

8

id. at 1053. Additionally, the court held that "all intentional acts are properly excluded by the express language of the homeowners policy." Id. However, because the acts alleged by Scarfo are not obviously related to Ginsberg's business activities and because the express language of Ginsberg's policy does not clearly exclude intentional invasions of privacy from coverage, we find that Landis does not guide us to the outcome in the instant case.

Ginsberg and Scarfo claim that the controlling case on the issue whether Ginsberg's improper conduct falls within the business related exclusion to the Personal Umbrella Policy is Scheer v. State Farm Fire and Casualty Co., 708 So. 312 (Fla. 4th DCA), review denied, 719 So. 2d 893 (1998). In Scheer, the district court found that the claims of three employees against a doctor for sexual harassment, battery, invasion of privacy and false imprisonment were not taken in the furtherance of a business interest and thus were not excluded from coverage under the business clause of the insured's umbrella policy.

Allstate asserts, however, that Scheer is not controlling on the instant case because the court in Scheer misapplied controlling Florida law. Specifically, Allstate asserts that the court improperly relied on Landis for the proposition that the insured's conduct "must be assessed in light of the relationship of the alleged conduct to the business activity." Scheer, 708 So. at 313. Allstate contends that this type of analysis is only proper when determining whether a non-business activity exception exists and

that, since there is not a non-business activity exception in Scheer, nor in the instant case, this type of analysis is inapplicable. Allstate further argues that "[t]he holding in Scheer would limit the exclusion to business activities only and would not allow it to apply to claims 'related to' or 'arising out of' the business activities." Allstate's position, therefore, is that to limit the policy language in this way is essentially to rewrite the policy, which is not permitted under Florida law. See Gulf Ins. v. Dolan, Fertig & Curtis, 433 So. 2d 512, 515-16 (Fla. 1983); State Farm v. Metropolitan Dade County, 639 So. 2d 63, 66 (Fla. 3d DCA 1994).

In addition, Allstate asserts that numerous Florida courts have given effect to such terms excluding coverage based on the business exclusion clause. See Liberty Mutual Insurance Co. v. Miller, 549 So. 2d 1200 (Fla. 3d DCA 1989) (denying coverage to a doctor who injured another doctor when he grabbed and pulled on his stethoscope in the course of an altercation over the care of a mutual patient); Santos v. State Farm Mutual Automobile Insurance Co., 707 So. 2d 1181 (Fla. 2d DCA 1998) (denying insured professor coverage under business exclusion for the act of grabbing a secretary who had been taking minutes at a departmental meeting). Allstate contends that all of Ginsberg's conduct arose out of and was related to his business pursuits because the business relationship between Ginsberg and Scarfo brought them together and gave Ginsberg the opportunity to commit the alleged acts, regardless of whether all the conduct occurred at the place of business or whether Scarfo was being paid for

the work that she did in connection with Ginsberg's corporations. Accordingly, Allstate insists that it did not undertake to insure risks associated with Ginsberg's corporations and all of the alleged conduct occurred while Ginsberg was acting in his capacity as President and Director of the corporations.

Allstate also contends that Florida public policy prevents coverage for the claims in this case. See Ranger Insurance Co. v. Bal Harbour Club, Inc., 549 So. 2d 1005 (Fla. 1989) (Court found that Florida Public Policy prohibits an insured from being indemnified for a loss resulting from intentional acts of religious discrimination because one should not be able to insure against one's own intentional act and allowing insurance would be inconsistent with the goal of deterring discrimination).

Allstate and Ginsberg also disagree on the issue of whether the Policy's general exclusion for intentional acts applies to the "invasion of rights of privacy" as a type of "personal injury" that may be caused by Ginsberg, which is listed as being covered under subsection (c) of definition 7. The general exclusion from coverage under the policy for intentional acts is stated as follows:

General Exclusions - **When This Policy Does Not Apply**

This policy will not apply . . . :

8.     to any intentionally harmful act or omission of an insured . . .

This exclusion does not apply to parts b), c), or d) of
Definition 7. "Personal Injury." **[Ginsberg App., 7].**

11

Ginsberg asserts that if a cognizable invasion of privacy can be found then Allstate's policy covers the loss in question because even though the policy does provide for an exclusion for intentional acts that exclusion does not apply to personal injury, and the policy lists "invasion of rights of privacy" as a type of personal injury. Ginsberg insists that the district court acknowledged that the "intentional acts" exclusion did not apply to claims for invasion of rights of privacy, but dismissed that line of reasoning without construing the policy provisions because the court had determined that Scarfo had not stated a cause of action for invasion of privacy under Florida law. Ginsberg further argues that a reading of the policy in a way that excludes coverage for intentional invasion of rights of privacy would essentially limit coverage for invasion of privacy to negligent acts of invasion of privacy. Accordingly, Ginsberg contends that this would create an inconsistency between the coverage provisions and the exclusion of coverage for intentional acts. Under Florida law, when a policy is ambiguous as to the coverage provided then the policy should be construed against the insurer. See Purrelli v. State Farm Fire & Casualty Co., 698 So. 2d 618 (Fla. 2d DCA 1997) (court held that a personal umbrella policy that purportedly limited coverage to accidents but which expressly provided for coverage for intentional torts was ambiguous and would be construed against the insurer in favor of coverage for a claim of invasion of privacy). Ginsberg makes the additional argument that, contrary to Allstate's assertions, there is no such thing as an actionable negligent invasion of

12

privacy because even though the results of the act may not be intended there is still intent to do the act. See Jacova v. Southern Radio and Television Co., 83 So. 2d 34 (Fla. 1955) (court held that the publishing of a photograph was an actionable invasion of privacy because the publisher "should have known" that publication of the photograph would offend the sensibilities of a normal person); see also Aetna Cas. And Surety Co., Inc. v. Miller, 550 So. 2d 29 (Fla. 3d DCA 1989).

Allstate responds that the personal umbrella policy covers only acts of negligent invasion of right of privacy and other "accidental" occurrences. Allstate claims that, since Ginsberg's conduct could not have been construed to be anything other than intentional and intentional acts are excluded from coverage, the policy does not provide for coverage for that type of conduct. In support of its position, Allstate argues that Florida public policy prevents coverage for claims for intentional acts. See Ranger Insurance Co. v. Bal Harbour Club, Inc., 549 So. 2d 1005 (Fla. 1989) (court found that public policy prohibits an insured from being indemnified for a loss resulting from an intentional act of religious discrimination).

*Conclusion*

Because we find no controlling authority, we find that this case raises unsettled questions of Florida law that may be dispositive. This court may certify such questions of state law to the state's highest court. See, e.g., SCI Liquidating Corp. v. Hartford

13

Fire Ins. Co., 181 F.3d 1210, 1219 (11th Cir.1999).   Our review of the arguments in this case regarding the elements of Florida's common law tort of invasion of privacy and Florida's interpretation of the relevant policy provisions persuades us that certification is appropriate.   Accordingly, we respectfully certify the following questions of law to the Supreme Court of Florida for instruction:

> DO PLEADINGS OF UNWELCOME CONDUCT INCLUDING TOUCHING IN A SEXUAL MANNER AND SEXUALLY OFFENSIVE COMMENTS STATE A CAUSE OF ACTION FOR THE FLORIDA COMMON LAW TORT LAW CLAIM OF INVASION OF PRIVACY ?
>
> DO ALLEGATIONS OF INTENTIONAL UNWELCOME CONDUCT INCLUDING TOUCHING IN A SEXUAL MANNER AND SEXUALLY OFFENSIVE COMMENTS CONSTITUTE AN "OCCURRENCE" UNDER FLORIDA LAW FOR PURPOSES OF INSURANCE COVERAGE?
>
> DO PLEADINGS OF UNWELCOME CONDUCT INCLUDING TOUCHING IN A SEXUAL MANNER AND SEXUALLY OFFENSIVE CONDUCT FALL WITHIN THE BUSINESS EXCEPTION TO COVERAGE WHEN THE ALLEGED CONDUCT OCCURRED IN THE WORKPLACE IN THE CONTEXT OF AN EMPLOYER-EMPLOYEE RELATIONSHIP BUT DID NOT PERTAIN TO THE PURPOSE OF THE BUSINESS?
>
> ARE ALLEGATIONS OF INTENTIONAL INVASIONS OF PRIVACY EXCLUDED FROM COVERAGE BY AN INTENTIONAL ACTS EXCEPTION WHEN THE POLICY EXPRESSLY PROVIDES COVERAGE FOR INVASIONS OF PRIVACY?

Our phrasing of these questions is not intended to limit the Supreme Court of Florida in considering the issues presented.  The entire record in this case and the briefs of the parties shall be transmitted to the Supreme Court of Florida for assistance in answering these questions.

14

QUESTIONS CERTIFIED.