[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 02, 2002
THOMAS K. KAHN
CLERK

No. 01-15180

D.C. Docket No. 00-01159-CV-CAP-1

ALTON V. HALLUM, JR.,

Plaintiff-Appellee,

versus

PROVIDENT LIFE AND ACCIDENT INSURANCE
COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(May 2, 2002)**

Before BLACK and HULL, Circuit Judges, and LAZZARA[*], District Judge.

PER CURIAM:

---

[*] Honorable Richard A. Lazzara, U.S. District Judge for the Middle District of Florida, sitting by designation.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV, OF THE GEORGIA CONSTITUTION.  TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES.

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of Georgia law determinative of the case, but unanswered by controlling precedent of the Supreme Court of Georgia or any other Georgia court.  We therefore certify the question for resolution by the highest court of Georgia.  See Ga. Code Ann. § 15-2-9 (1997); Ga. Sup. Ct. R. 46.

## I.  BACKGROUND

Alton V. Hallum ("Hallum") is a retired medical doctor who specialized in the practice of obstetrics and gynecology.  On April 1, 1998, at the age of 61, he was declared totally disabled from performing his occupation due to bilateral injuries to the median nerve in his left hand, more commonly referred to as carpal tunnel syndrome ("CTS").

On March 1, 1987, Provident Life and Accident Insurance Company ("Provident") issued a disability income insurance policy ("the Policy") to Hallum. The Policy defines "total disability" as follows:

> Total disability or totally disabled means that due to Injuries or Sickness:

2

(1) you are not able to perform the substantial and material duties of your regular occupation; and

(2) you are receiving care by a Physician which is appropriate for the condition causing the disability.

In a separate provision, the Policy defines "presumptive total disability," in relevant part, as follows:

You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

. . . the use of both hands . . .

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provision of this Policy. But, benefits will start on the date of loss . . .

The extent and duration of the benefits provided under the Policy are contingent on whether the disability is caused by an "injury" or a "sickness." If the disability is classified as an "injury," the claimant is entitled to lifetime disability benefits for total disability that occurs before the age of 65. The term "Injuries" is defined in the Policy to mean "accidental bodily injuries occurring while your policy is in force." The term "accidental bodily injuries" is not further defined. If the disability is classified as a "sickness," the claimant is only entitled to disability benefits for 48 months for a disability starting between ages 61 and 62. The term

"Sickness" is defined in the Policy to mean "sickness or disease which is first manifested while your policy is in force."

Hallum began his private medical practice in 1969. As an OB\GYN, he performed various examinations and surgical procedures, all of which required him to perform repetitive hand motions. In approximately 1994 or 1995, after 25 years of medical practice, Hallum began to notice intermittent pain in his left hand, his dominant hand, when he performed these examinations and procedures. He had not sustained any injury or trauma to his hand, such as a sprain or a broken bone. Hallum did not initially seek medical treatment because he attributed the pain to arthritis.

In April 1997, Hallum contacted Dr. Kay Kirkpatrick, an orthopedic surgeon, who diagnosed his medical condition as CTS. That same year, Dr. Richard Bernstein, a neurosurgeon, performed median nerve conduction studies on Hallum's hand and confirmed the diagnosis of CTS. Hallum's treating physicians advised him that his condition had developed over an extended period of time.

Dr. Kirkpatrick initially prescribed hand splints, which were helpful for a short time. Hallum also received several cortisone injections, but his pain only grew worse. In July 1997, Dr. Kirkpatrick performed a surgical procedure known as carpal tunnel release on Hallum's left hand. The procedure was unsuccessful.

4

Consequently, Hallum's treating physician diagnosed his medical condition as permanent and irreversible.

In April 1998, Hallum decided that he did not want further surgery and that he would terminate his medical practice because he had become unable to use his hands to perform the necessary functions of his occupation. After terminating his practice, Hallum continued to receive non-surgical treatment for his left hand and later was treated for carpal tunnel syndrome in his right hand. Since retiring, Hallum has remained active and has not lost any real use of his hands when engaging in normal day-to-day activities.

In April 1998, Hallum submitted a claim to Provident for benefits under the Policy based on total disability due to CTS. Hallum reported that the disability began on April 1, 1998, the last day he saw patients. Provident paid benefits to Hallum under the "Sickness" provision of the Policy, which entitled Hallum to benefits for a maximum of 48 months. Provident refused to approve Hallum's claim for benefits under the "Injuries" provision of the Policy.

## II. PROCEDURAL HISTORY

On April 4, 2000, after the 48-month benefit period expired, Hallum brought this action for declaratory judgment in the Superior Court of Fulton County, Georgia. He sought a determination of: (1) whether his disability was due to

"injury" or "sickness" as such terms are defined in the Policy; (2) whether he was entitled to disability benefits under the "Injuries" provision of the Policy; and (3) whether he was entitled to disability benefits under the "presumptive total disability" provision of the Policy. Provident removed the case to the United States District Court for the Northern District of Georgia on the basis of diversity jurisdiction. See 28 U.S.C. § 1332(a).

During discovery, Dr. Kirkpatrick testified that she did not know the definitive cause of Hallum's CTS. She explained that she could not say for certain whether CTS was caused by heart disease, an isolated injury, or some undiagnosed sickness. She did, however, definitively state that Hallum's CTS was aggravated by his job. Similarly, Dr. Frank Joseph, who also treated Hallum, testified that Hallum's CTS was due to a repetitive motion disorder caused by his occupation. He further testified that the condition developed over an extended period of time. Dr. Bernstein testified that he did not perform a clinical consultation on Hallum and, therefore, did not have an opinion on CTS. Dr. Bernstein added that, given a patient with Hallum's medical and occupational history, he believed that CTS would be due to significant hand activity, such as surgery, over an extended period of time. Provident did not offer any medical testimony or other evidence to contradict the testimony of Hallum's treating physicians.

6

At the close of discovery, Provident moved for summary judgment on the grounds that Hallum's disability was not due to "Injuries," defined as "accidental bodily injuries occurring while your policy is in force," and that Hallum has not suffered "the entire and permanent loss of: . . . the use of both hands" so as to be presumptively totally disabled within the terms of the Policy. Hallum filed a cross-motion for summary judgment.

The district court granted summary judgment in favor of Hallum under the "Injuries" provision. The court held, based on the testimony of Hallum's treating physicians, that Hallum's "CTS is due to an injury and not a sickness or disease." The district court relied on several findings to support its conclusion. First, the court found that the policy was ambiguous and, therefore, must be construed against Provident. Second, the court found that the term "accidental" described the nature, not the cause, of the injury. Third, the court found Hallum's CTS was an "injury" under Georgia's workers' compensation statute.

Because the district court awarded summary judgment in favor of Hallum under the "Injuries" provision, it did not address whether Hallum also was entitled to benefits under the presumptive total disability provision. As a result of the district court's decision, Hallum is entitled to lifetime benefits of the Policy.

7

III.  DISCUSSION AND CERTIFICATION

Provident appeals the decision of the district court, raising as its primary issue whether Hallum's disability is "due to Injuries," that is, "accidental bodily injuries" occurring while the Policy was in force.  Provident contends that since Hallum failed to prove that his CTS was temporally and spatially connected with an identifiable event occurring while the Policy was in force, his CTS cannot be classified as an injury within the plain language of the Policy.  Hallum counters with two arguments: (1) Provident failed to provide any evidence contradicting the medically supported contention that his CTS was due to an injury and (2)  Provident failed to provide any evidence justifying its arbitrary classification of Hallum's disability as a sickness.  Because Georgia's substantive law governs the resolution of this issue in this diversity action,[1] and because the parties concede, and our independent research confirms, that the issue presented for resolution in this appeal is unsettled under Georgia law, we deem it appropriate to certify the following question for resolution by the Georgia Supreme Court:

> WHETHER, UNDER GEORGIA LAW, CARPAL TUNNEL
> SYNDROME, WHICH IS CAUSED BY REPETITIVE HAND
> MOTION, IS MORE PROPERLY CLASSIFIED AS AN "INJURY"
> UNDER THE PROVISIONS OF A DISABILITY INCOME

---

[1]  See SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1214 (11th Cir. 1999).

INSURANCE POLICY WHICH DEFINE AN "INJURY" TO MEAN "ACCIDENTAL BODILY INJURIES OCCURRING WHILE YOUR POLICY IS IN FORCE," OR WHETHER CARPAL TUNNEL SYNDROME IS MORE PROPERLY CLASSIFIED AS A "SICKNESS" UNDER THE PROVISIONS OF THE SAME POLICY WHICH DEFINE "SICKNESS" TO MEAN "SICKNESS OR DISEASE WHICH IS FIRST MANIFESTED WHILE YOUR POLICY IS IN EFFECT?"

In certifying this question, we do not intend the particular phrasing of the question to limit the Georgia Supreme Court in its consideration of the problem posed by this case and in its analysis of the record certified in this case. This latitude extends to the Georgia Supreme Court's restatement of the issue and the manner in which an answer is given. In order to assist the Georgia Supreme Court's consideration of this case, the entire record, along with the briefs of the parties, shall be transmitted to that Court.

QUESTION CERTIFIED.