65862. ANDERSON et al. v. SOUTHEASTERN FIDELITY
INSURANCE COMPANY.
65863. PILLSBURY et al. v. SOUTHEASTERN FIDELITY
INSURANCE COMPANY.

BIRDSONG, Judge.

Insurance Coverage — Contract Construction. On May 22, 1981, John Williams was driving a car owned by Neil Baker. Rufus Hamilton was a passenger in the Williams car. Robert Pillsbury was driving a car registered in his mother's name, Edna Beasley, but for all intents and purposes, belonging to and wholly operated by Pillsbury. Williams improvidently encountered Pillsbury at an intersection in Savannah. Either Williams or his passenger Hamilton challenged Pillsbury to a "drag race" and Pillsbury accepted. There was evidence that Pillsbury was "revving" his motor behind the Williams car before he was challenged to the race.

The two cars proceeded to a long straight stretch of road proceeding in a west to east direction with two lanes going east and a third lane going west. The two cars entered the straight stretch of road on line and at the word "go," both cars rapidly accelerated. Some distance down the road, a railroad crossed the road causing a rough crossing. According to Pillsbury, he was aware of the rough crossing and let up on his accelerator before reaching the crossing. While Pillsbury had initially taken the lead, the Williams car had begun to edge ahead by the time the railroad was reached. As Williams passed over the railroad, he seemed to lose control of the car, and it went onto the right shoulder just as the road began a turn to the left. Williams apparently tried to regain control and pulled the car to the left. The car went out of control, skidded across the two eastbound lanes into the westbound lane and collided with a third car going west operated by Michael Anderson and owned by Michael and Barbara Anderson.

Kevin Osborne was a passenger in the Anderson car. After Williams collided with the Anderson car, he skidded back into the center eastern lane where Pillsbury, while attempting to stop his vehicle, collided with the Williams auto. As a result of this three-car collision, Williams was killed, Rufus Hamilton, Michael Anderson, Kevin Osborne were injured, the Baker and Anderson cars were "totalled," and the Beasley car suffered property damage.

Pillsbury was insured for auto coverage by Southeastern Fidelity, providing the required coverage. A part of that policy listed a number of exceptions (19) to the coverage provided. One exception limited and excepted any coverage when the covered vehicle or operator was engaged in activities involving a rented or leased vehicle, a public livery conveyance, or "while used or operated in *any* racing event, speed contest or exhibition." (Emphasis supplied.) Inasmuch as Pillsbury admitted that the accident occurred during or at the end of a "drag race," Southeastern Fidelity sought a declaratory judgment naming all persons potentially interested in Pillsbury's coverage as defendants, seeking to ascertain if it was required to furnish Pillsbury or his mother coverage or a legal defense in the event Pillsbury or Beasley were sued as a result of the accident. After obtaining depositions of all witnesses, Southeastern Fidelity moved for summary judgment. The trial court construed the contract as providing no coverage for a racing event and granted Southeastern Fidelity summary judgment. The Andersons, Osborne, Pillsbury, and Mrs. Beasley all bring this appeal complaining of the grant of summary judgment, urging that the court erroneously construed the exclusion and furthermore, that at the time of Williams' collision with the Anderson vehicle, the race was over and the exclusion could have no application. *Held:*

1. In the principal enumeration of error, all the appellants urge, in effect, that the 19 exclusions listed in the policy provide single subject exclusions. Thus, the first exclusion although incorporating three uses of a vehicle (leased or rented; public livery; racing event or speed contest), all deal with a commercial enterprise; i. e., use of the vehicle for profit. Thus, the argument continues that the use of the vehicle in a "racing event" must mean a prearranged, regulated racing event with financial gain involved. Inasmuch as the race in this case was a private, on the spur-of-the-moment affair, the exception does not apply.

Appellants assure us that there are no reported cases in this state dealing with an exclusionary clause such as the one in the present case. Our independent research likewise has uncovered no cases on point. However, several foreign state cases have dealt with the issue and can furnish us illuminating discussion.

We start with the premise that where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the trial court. A contract is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Village Enterprises v. Ga. R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901). The policy of our appellate courts is to enforce strictly an insurance contract in accordance with the meaning of its unambiguous terms, even in those instances where the court's sympathy may avowedly rest with an unfortunate claimant, yet preclude recovery by application of that strictness of policy. *State Farm Mut. Auto. Ins. Co. v. Sewell,* 223 Ga. 31 (153 SE2d 432); *Boyes v. Continental Ins. Co.,* 139 Ga. App. 609, 610 (229 SE2d 75). Several cases have been cited to us by appellants that construe exclusionary clauses which deal with prearranged races (i. e., professional speed contests). We observe in the clause under consideration in this contract the exclusion relates to *any* racing event or speed contest. Thus, we conclude that to restrict the exclusion only to prearranged racing events would be the more strained interpretation of those reasonably available where the clause refers to *any* racing event or speed contest. Moreover, we must reject appellants' interpretation that the single purpose of the clause is to exclude commercial enterprises. Rather, we find that simply attaching a commercial label to a car, as such, has little or no effect upon auto insurance. What we do find relevant is that the three prohibited uses of an auto, i. e., to lose control of its use by leasing it or renting it to others; to use it as a "taxi," or to be involved in a racing event or speed contest involves an increased hazard and describes a situation in which an automobile used as a family pleasure vehicle is not usually found or used by its owners or operators. Thus rather than prohibiting a commercial use of vehicles, we conclude the legitimate purpose of a racing exclusion is to avoid an increased hazard. See *Mattox v. Cotton States Mut. Ins. Co.,* 156 Ga. App. 655, 657 (275 SE2d 667). See also Ala. Farm Bureau Mut. Cas. Ins. Co. v. Goodman, 188 S2d 268, 270 (Ala. 1966). The contract exclusion described *any* racing event, a term having a reasonable and understandable meaning, clear of ambiguity. The evidence showed, and Pillsbury admitted, that he was engaged in a race on a public highway, an increased hazard which led directly to the ensuing accident. Under such circumstances, we can find no error in the conclusion by the trial court that Pillsbury's act of engaging in a drag race fell within the exclusion denying coverage while using the car in any racing event or speed contest.

2. Secondly, appellants argue that even if the facts showed that Williams and Pillsbury engaged in a racing event, the evidence also showed that Pillsbury had withdrawn from the race before the accident occurred.

We must also reject that conclusion. Pillsbury and Williams voluntarily engaged in a joint act on a public road of this state that was in violation of law, driving in excess of 80 mph in a "drag race." Their responsibility for their voluntary acts lasted as long as either continued to act under the agreement for the race, without knowledge of abandonment by the other, and within the scope of the agreement. Saisa v. Lilja, 76 F2d 380 (1st Cir. 1935); Boykin v. Bennett, 253 N. C. 725 (118 SE2d 12, 17). Assuming that Pillsbury had conceded defeat, there is no evidence that Williams ever desisted from the attempt to win the race prior to losing control of his car and initiating the chain of events that caused the three cars to crash into each other. Furthermore, if the participants approach the starting point at an equal and non-competitive speed, the approach logically becomes a part of the race. Likewise, because participants cannot stop immediately at the finish line, slowing down to a lawful and non-competitive speed is also an essential part of the race even though this may occur beyond the finish line. Farmers Ins. Exchange v. Peters, 502 SW2d 319, 322 (Mo. 1973). The additional hazards clearly exist from beginning to the end of the enterprise and not just during that period of time wherein a winner of the race was being determined. Alabama Farm Bureau, supra. We find no error in the grant of summary judgment to Southeastern Fidelity Insurance Company in relation to its question of coverage under Pillsbury's policy.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED MAY 10, 1983 —
REHEARING DENIED MAY 26, 1983 — 

*Thomas J. Mahoney, Jr., Clark Smith, Joseph P. Brennan,* for appellants (case no. 65862).

*Dwight T. Feemster,* for appellants (case no. 65863).

*Dana F. Braun,* for appellee.