## 40062. ANDERSON et al. v. SOUTHEASTERN FIDELITY INSURANCE COMPANY.

WELTNER, Justice.

Anderson and another were injured when their car was struck by a vehicle operated by Pillsbury, who carried automobile liability insurance issued by Southeastern. It is undisputed that at the time of the collision Pillsbury was engaged in an impromptu acceleration contest with another vehicle, commonly called a "drag race," along a public roadway.

Southeastern denied coverage, claiming a policy exclusion, and was granted summary judgment, which was affirmed by the Court of Appeals. *Anderson v. Southeastern Fidelity Ins. Co.,* 166 Ga. App. 750 (305 SE2d 128) (1983). We granted certiorari to consider the scope of the policy exclusion.

The portion of the policy which is in issue reads as follows: "This policy does not apply: (a) Under any of the coverages to any automobile (1) while rented or leased to others by the Insured; (2) while used as a public livery conveyance, unless such use is specifically declared and described in this policy; or (3) while used or operated in any racing event, speed contest or exhibition." The Court of Appeals interpreted the policy to exclude coverage at any time that a vehicle might be engaged in any race, whether pre-arranged, or commercially oriented, or, as here, one which resulted from a casual encounter.

Words, like people, are judged by the company they keep. *Noscitur a sociis.* See 73 AmJur2d 406, Statutes, § 213. The critical phrase, "any racing event," thus must be gauged by the words surrounding it — and in this case, by the two levels of its syntagmatic framework.

First, subparagraph (3) extends the exclusion to three categories — "any racing event, speed contest or exhibition" — although it is difficult to discern any substantive distinction between a "racing event" and a "speed contest." These terms are associated in the subparagraph with a third term, "exhibition," which might be understood to impart a semantic content to the preceding two terms. That is to say, the juxtaposition to the term "exhibition" *can* be understood to mean that a racing event and a speed contest are but instances wherein the operation of an automobile in an exhibition will be grounds for exclusion. It should be noted that there has long existed a genre of public entertainment based upon the exhibition of unusual skills — not necessarily involving speed — in driv-

ing automobiles.[1]

The final term, "exhibition," can be thus interpreted as one which encompasses the preceding two terms.

Moving to the larger framework consisting of the entire text, supra, it will be seen that subparagraph (3) follows two other instances wherein the use to which a vehicle is devoted will annul liability coverage. The first is where it is leased to others, and the second is where it is used as a "public livery conveyance," which we understand to mean a taxicab.

The common element in these first two provisions is at least *some* degree of structured deliberateness on the part of the insured, as the lease of the vehicle to others would create possessory rights on the part of the lessees, and the use as a taxicab would doubtless require compliance with local regulations within the police power of the locality of operation.

Neither of the first two exclusions appears to contemplate any impromptu or *ex tempore* use of a vehicle.

Accordingly, the common element of the first two exclusions can be seen to inform the third, in precisely the same manner in which the third term of the third exclusion can be seen to inform the first and critical term, "any racing event."

Two broader considerations must be noted.

The first is that an ambiguity in a document should be construed against its draftsman. "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred; . . ." OCGA § 13-2-2 (5) (Code Ann. § 20-704). Of course, this applies to a policy of liability insurance. *Alley v. Great American Ins. Co.,* 160 Ga. App. 597 (287 SE2d 613) (1981).

The second is the public policy of our state, enunciated in the advent of compulsory motor vehicle liability insurance: that innocent persons who are injured should have an adequate recourse for the recovery of their damages. OCGA § 40-9-1 et seq. (Code Ann. § 68C-101 et seq.) (Motor Vehicle Safety Responsibility Act, Ga. L. 1977, p. 1014 et seq.)

---

[1] The writer vividly recalls from boyhood wonderful billboards, both lurid and alluring, announcing such extravaganzas at the Southeastern World's Fair — cars leaping vast chasms and hurtling over assorted perils; cars roaring through great gouts of raging flame; cars blazing along at such speeds and in such close proximity that miscalculation by but one hair's breadth means sudden death!

Who can forget the legendary names of Lucky Teeter and Joey Chitwood?

On the basis of these analyses, individually and *en gross,* we hold that the third subparagraph of the policy provision cannot serve to exclude liability coverage of the event in question.

Indeed, to hold the contrary might interject a new factual issue relative to coverage in practically every automobile collision — that is, whether or not the driver were engaged in a race, be it against another vehicle or against time itself.

*Judgment reversed. All the Justices concur, except Marshall, P. J., who dissents.*

DECIDED OCTOBER 5, 1983 —
REHEARING DENIED OCTOBER 25, 1983.

*Ranitz, Mahoney, Forbes & Coolidge, Thomas J. Mahoney, Jr., Clark Smith, Bouhan, Williams & Levy, Joseph P. Brennan,* for appellants.

*Karsman, Brooks, Painter & Callaway, Dana F. Braun, Duffy & Feemster, Dwight T. Feemster,* for appellee.

HILL, Chief Justice, concurring.

In my view, it is also important to consider what the insurance company chose not to exclude from coverage. It could have excluded, but did not, any automobile "while racing or speeding." Instead, the insurance company chose to exclude any automobile "while used or operated in any racing event, speed contest or exhibition."

Clearly, the drivers here involved were engaged in a "drag race" along a public road at night. They were not engaged in a stunt car show or any other type of "exhibition." Although racing, they were not engaged in a "racing event." If it were otherwise, the word "event" could have been omitted. And although speeding, they were not engaged in a "speed contest," when the word "contest" is considered in context with the words "event" and "exhibition."

It is unnecessary for us to decide exactly what the insurance company meant when it used the words "racing event, speed contest or exhibition." The company is under an obligation to avoid ambiguity and lack of clarity in its policies and it could have used the words "racing or speeding," yet it did not. It is only necessary for us to decide whether an impromptu drag race is a "racing event" or "speed contest" within the meaning of the policy. It is not, and I therefore join the majority opinion.

I am authorized to state that Justice Smith joins in this concurring opinion.

Marshall, Presiding Justice, dissenting.

The majority has seen fit to impose a most strained interpretation on words of common meaning, i.e., "racing event" and "speed contest." The Court of Appeals opinion follows common sense and ordinary logic in interpreting words and phrases used daily by millions of individuals. Without further beating of a dead horse, suffice it to say that all "events" and "contests" and, indeed, "exhibitions" are not commercial in nature. When the three nouns are preceded by the word "any" in a category excluded coverage by the policy terms, the policy excludes both commercial and non-commercial events, contests and exhibitions.

I respectfully dissent.