### 71231. AUTO-OWNERS INSURANCE COMPANY
### v. SMITH et al.
#### (343 SE2d 129)

CARLEY, Judge.

Resolution of the instant case requires a recitation of the following facts: On November 18, 1977, appellant-plaintiff Auto-Owners Insurance Company (Insurer) issued an automobile policy which listed appellee-defendant Mr. Sam Smith as the named insured. On June 7, 1978, Sam Smith's teenage son, appellee-defendant Franklin Smith, "was added as a driver" under the policy and the premium that Sam Smith thereafter was charged and paid reflected this additional risk. In early 1980, Franklin Smith purchased a 1973 Plymouth automobile, apparently using his own funds to do so. Notwithstanding the lack of any ownership interest or of title in his own name, Sam Smith had the Plymouth added as an insured vehicle under his policy with the Insurer. In April of 1983, Franklin Smith decided that he would leave his father's household to attempt to set up his separate residence in another city and that he would take his Plymouth with him. In light of these developments, Sam Smith contacted the Insurer. It is not clear whether this contact occurred before or after Franklin Smith's actual departure. It is likewise unclear exactly what Sam Smith told the Insurer. However, the record does show that, as the result of Sam Smith's contact, the Insurer issued change orders in April of 1983, whereby both the Plymouth and Franklin Smith were to be deleted from the policy. With regard to Franklin Smith, the stated basis for the deletion was that he "[n]o longer resides in household." However, the change orders reflected that these deletions were not to take immediate effect. Instead, they were to become effective at the next policy renewal date, that being May 18, 1983. Shortly after leaving home, Franklin Smith attempted to sell his Plymouth. Although the transaction was never consummated, he prematurely transferred title to the prospective buyer. Then, while driving the Plymouth on May 10, 1983, Franklin Smith was involved in a collision. As the result, a suit for damages was brought which named Franklin Smith, but not his father, as a defendant.

The Insurer was called upon to defend the suit against Franklin Smith. The Insurer, however, instituted the instant declaratory judgment action, seeking a declaration that liability coverage was not afforded for the collision pursuant to Sam Smith's policy. After discov-

ery, cross motions for summary judgment were filed. The trial court conducted a hearing and denied the Insurer's motion but granted the motion of appellee-defendants. The Insurer appeals from this order, the effect of which is to declare that liability coverage is afforded under Sam Smith's policy for the May 10, 1983 collision involving his son and the Plymouth.

The Insurer does not assert that the policy contains any express language which extends coverage thereunder only to such automobiles as are actually "titled in" or that are actually "owned" by the named insured. Moreover, the Insurer does not deny the existence of coverage on the basis of any alleged misrepresentation in the application regarding title to or ownership of the listed Plymouth. The Insurer simply invokes the applicability of the general legal principle of "insurable interest." It asserts that, notwithstanding any other considerations, in the absence of title or ownership, Sam Smith lacked the requisite "insurable interest" in the Plymouth necessary to support a contract of insurance.

There are only two statutory provisions which relate directly to the principle of "insurable interest." OCGA § 33-24-3 deals with "personal insurance" and, under its terms, is clearly inapplicable to the instant issue concerning liability coverage. See also OCGA §§ 33-24-6; 33-7-2; 33-7-4. Likewise, OCGA § 33-24-4 deals with "property insurance" and has no application here. See OCGA § 33-7-6. It is our decisional rather than statutory law that addresses "insurable interest" in the context of liability coverage. " 'Potential liability from the use of a motor vehicle, sufficient to create an insurable interest, may be vicarious, and such an interest may thus arise where it is contemplated that the vehicle may be driven by a servant or agent of the insured, or where, for some other reason, the insured may be vicariously liable for injuries caused through the use of the vehicle. No legal or equitable interest in the insured vehicle as property is necessary to support an insurable interest regarding liability insurance.' " *James v. Pa. Gen. Ins. Co.*, 167 Ga. App. 427, 430 (306 SE2d 422) (1983). "[W]e can perceive no reason why [one] though having no insurable interest in the car itself, could not obtain liability insurance . . . to protect [himself] against the eventualities that might occur when the vehicle should be used [in such circumstances as would potentially result in his vicarious liability]. The policy here does not insure against loss of the vehicle; it insures against liability. Consequently, the matter of insurable interest [in the vehicle itself] is not controlling of the issues and *we must look to provisions of the contract itself.*" (Emphasis supplied.) *Great American Ins. Co. v. Lipe*, 116 Ga. App. 169, 172-173 (156 SE2d 490) (1967). Thus, there is no controlling statutory provision regarding "insurable interest" for liability purposes and the uncontradicted evidence in the instant case shows that, at the time the

policy was initially secured as well as on its subsequent renewals, Sam Smith had a legally sufficient "insurable interest" for that purpose by virtue of the family purpose doctrine. *James v. Pa. Gen. Ins. Co.*, supra. Under these circumstances, the question of whether that interest may have been lost, such that liability coverage should no longer be deemed afforded under the policy, is essentially an issue of contractual interpretation. *Great American Ins. Co. v. Lipe*, supra. Compare *Georgia Mut. Ins. Co. v. Cook*, 151 Ga. App. 328 (259 SE2d 717) (1979) (named insured never had insurable interest).

The instant policy did not, by its express terms, limit liability coverage only to vehicles as were titled in Sam Smith's name at the time of the incident giving rise to the claim. It did not even expressly limit liability coverage to only such vehicles as he then "owned." Compare *James v. Pa. Gen. Ins. Co.*, supra. Instead, it unambiguously provided liability coverage for personal and property damage "arising out of the ownership, maintenance or use . . . of *the automobile*." (Emphasis supplied.) Insofar as it is relevant here, "[t]he automobile" is defined by the policy simply as "a motor vehicle or trailer described. . . ." There is no dispute that the Plymouth was a listed automobile under the policy. Under the terms of the policy, an "insured" for purposes of liability coverage was defined, insofar as is relevant, as "the named insured and any person using the automobile and any person or organization legally responsible for its use, provided the actual use thereof is with the permission of the named insured or if the named insured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant." Franklin Smith was himself a listed driver under the policy. It is thus clear that, notwithstanding any issue concerning title or ownership extraneous to the very terms of the policy itself, the Insurer agreed to provide liability coverage in all of those circumstances wherein the actual use of the listed Plymouth by Franklin Smith, a listed driver, was shown to be within the scope of Sam Smith's permission. "[T]he 'actual use' contemplated and intended by the policy refers only to the purpose to be served and not the operation of the vehicle." *Strickland v. Ga. Cas. &c. Co.*, 224 Ga. 487, 492 (162 SE2d 421) (1968). The evidence is undisputed that, as thus defined, the "actual use" of the Plymouth by Franklin Smith in his newly emancipated circumstances was with Sam Smith's "permission."

There is nothing within the express terms of the policy itself which would apprise Sam Smith that, under the existing circumstances, liability coverage would *not* continue to be afforded Franklin Smith as an "insured" whose "actual use" of the listed Plymouth was permitted. It would have been a simple matter for the Insurer to have drawn its policy so as to extend coverage only to such vehicles as Sam Smith personally "owned" or as were "titled" in his name. However,

construing the policy, as actually written, against the Insurer and giving due consideration to this State's public policy as regards compulsory motor vehicle liability insurance, the trial court's ruling in favor of the existence of liability coverage was correct. See generally *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983). The grant of appellees' motion for summary judgment and the denial of the Insurer's motion is affirmed.

*Judgments affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED MARCH 11, 1986 —
REHEARING DENIED MARCH 24, 1986.

*William E. Cannon, Jr., Michael S. Meyer von Bremen*, for appellant.

*J. Wayne Parrish, Willie E. Lockette, William A. Erwin*, for appellees.