A04A0417. LIFEPINE ROOFING PARTNERS et al. v. BESSER.

(594 SE2d 387)

ELDRIDGE, Judge.

This is an appeal by the defendants from the grant of summary judgment to the plaintiff. Finding no error, we affirm.

On February 6, 1995, Richard D. Besser and LifePine Roofing Partners formed Timber Products Holding Company, LLC and its subsidiary, Tamark Manufacturing Company, LLC. LifePine was owned by Kenneth P. Rule and William B. Shearer, Jr.[1] An operating agreement was entered into under which Besser was employed as the companies' manager. On December 17, 1997, Besser was terminated as manager, because for three years of its existence, Tamark had massive financial losses. Under Article 10.2.2 of the agreement, LifePine notified Besser that Timber Products had assigned its "call" rights to LifePine and that LifePine was exercising such rights to acquire all of Besser's member interest so that it would be the sole owner of Timber Products at a bargain price based upon the alleged fair market value.

---

[1] "Besser and LifePine Roofing Partners ('LifePine'), whose owners were Rule and Shearer, entered into an operating agreement to form Timber Products." *Besser v. Rule*, 270 Ga. 473-474 (510 SE2d 530) (1999).

As assignee of the call rights from Timber Products, LifePine and Rule and Shearer, its partners, were privies in the former suit even though LifePine was not named as a party to such suit. As such, collateral estoppel bound them by the holding of the Supreme Court. Thus, Shearer cannot now claim not to be a partner of LifePine.

Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Collateral estoppel requires identity of the parties and their privies in both actions. However, collateral estoppel does not require precise identity of the claim — so long as an issue was determined in the previous action and there is identity of the parties or their privies, that issue may not be re-litigated, even as part of a different claim. Collateral estoppel not only precludes those issues that actually were litigated and decided in the previous action, it also precludes issues that necessarily had to be decided in order for the previous judgment to have been rendered.

(Footnotes omitted.) *In re T. M. G.*, 275 Ga. 543, 544 (570 SE2d 327) (2002).

Under the operating agreement Article 1.18, Besser paid in $80,000 for a 35 percent interest and made a $200,000 loan that could be converted to a convertible preferred member interest up to the dollar amount of the loan by written election or death. Under Articles 1.17, 1.18, 1.20, and 5.1.2 (a), LifePine's only contribution to capital had been a patent, Patent No. 4,971,125, and trade name, Trademark No. 1718,150, with an agreed fair market value of $371,428 and LifePine became a 65 percent member interest as a convertible preferred member interest in such amount. Thus, on December 17, 1997, the company had some value for such patent and trademark as assets three years after acquisition. However, the opinion rendered on August 20, 1998, by the company accountant, J. Harry Haslam, acting under Article 1.11 as designated appraiser for LifePine, stated that the company had a zero fair market value. "Since the Call rights under the operating agreement are still viable, an adequate remedy at law exists. The availability of money damages affords Besser an adequate and complete remedy, precluding the entry of injunctive relief." (Citations omitted.) *Besser v. Rule*, 270 Ga. 473, 475 (510 SE2d 530) (1999). Thus, the Supreme Court held that the call had not been fully exercised at the notice, notwithstanding the position before this Court that Besser lost all rights of ownership upon the notice of the call.

The reasonable inference arises from all of the undisputed facts of this case that the reason LifePine has engaged in the time and expense to litigate this case over six years in two separate lawsuits over an allegedly insolvent company is that the patent and trademark owned by Timber Products have some value to LifePine or to whoever controls such company. LifePine was the original owner of such intangible property before making a contribution to capital of Timber Products and appears to want to again control such property through the exclusive ownership of Timber Products.

After notice of the call and the appointment of an appraiser by LifePine, under Article 1.11, Besser also had the right to name an appraiser. If Besser's appraiser and Haslam could not agree on a fair market value, then they had to agree to name a third appraiser. A third appraiser was never named, because Besser would not name an appraiser. Thus, LifePine sought to squeeze Besser out by exercising the call rights at a cost of zero for the fair market value of Besser's member interest and acquire sole control over the patent and trademark with no expenditure.

On December 19, 1997, Besser sued Kenneth P. Rule, William B. Shearer, Jr., Tamark Manufacturing Company, LLC, and Timber Products Holding Company, LLC, seeking legal and equitable relief to stop the call, and the defendants counterclaimed. The trial court

denied his request for injunction, and the Supreme Court affirmed. *Besser v. Rule*, supra at 473. This case remains pending for damages; the defendants represented to the Supreme Court that there was an adequate remedy at law and that there had been no exercise of the "call," because the value of the membership interest could not be determined. The Supreme Court opinion stated: "LifePine has not yet closed its exercise of the 'call' rights as provided for by the Timber Products Agreement because of the ongoing dispute between the parties as to the formula value of the buyout." Id. at 474, n. 2. As admitted by the defendants in their brief, such dispute remains unresolved even today.

On February 13, 2000, Besser died, and on May 10, 2002, his executrix brought this action, alleging that under the operating agreement on Besser's death the note for $200,000 automatically converted under the convertible preferred member interest, requiring LifePine to acquire such member interest under Article 8.6.4. In 1997, LifePine contends that on the date of the call Besser lost any ownership interest in the company so that Article 8.6.4 was no longer effective at the time of his death. On July 29, 2003, the trial court granted summary judgment to the Besser estate, requiring LifePine to purchase Besser's convertible preferred interest.

The defendants contend that the trial court misconstrued the provisions of the operating agreement in ruling that the call rights under Article 10.2.2 were not properly assigned or exercised in 1997, terminating Besser's interest in Timber Products at that time.

In construing the operating agreement, the trial court reasoned that, under Article 8.4, there had to be a unanimous vote to sell and assign any asset of the company and the assignment of the call rights as to Besser's member interest required his consent. Article 10.1 gives the member the right to sell his interest. Article 10.2.2 states that the "Call right may be assigned by the Company at any time." The trial court found:

> [w]hen paragraphs 10.1 and 10.2.2 are read in conjunction with each other, they give the appearance of allowing Timber Products to assign its call rights to LifePine, or any other entity, at any time. However, a call right is considered [an] asset of the company. . . . [T]he company is required to have a unanimous vote from the Members in order to dispose of any asset. This is in accordance with Art. 8, ¶ 8.4 of the Operating Agreement. Timber Products attempted to assign its call right to LifePine in accordance with Article

10. However, this was done without one of the Member's consent — Besser.

(Footnote omitted.) The trial court misinterpreted Article 8.4. It provides:

> *Approval of Sale of All Assets.* The Members unanimous vote shall be required to approve (a) the sale, exchange or other disposition of all or substantially all, of the Company's assets which is to occur as [a] part of a single transaction or plan, or (b) the merger of the Company or (c) any other disposition of the Company or its assets as part of a single transaction or plan even though effected through a series of transactions.

The assignment of the call rights to Besser's member interest does not constitute the sale of all or substantially all of the company's assets where unanimous agreement was required and did not come within any of the three categories requiring unanimous action of all voters. Such language is clear and unambiguous so that the trial court did not need to construe the operating agreement but only to follow the intent of the parties. *McVay v. Anderson*, 221 Ga. 381, 385 (144 SE2d 741) (1965) ("The cardinal rule of construction is the ascertainment and effectuation of the intent [of the parties].") (citations omitted). The entire contract must be examined to determine the intent in Article 8.4 (a). *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744 (2) (149 SE2d 511) (1966). When the other two categories of conditions requiring unanimous agreement in Article 8.4 (b) and (c) are examined in conjunction with (a), the merger, disposition of the company, or sale of its assets that amounts to a sale of the company in any form of transaction and the sale of all the assets or substantially all the assets, all such categories fit into the similar categories requiring unanimous agreement. See *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983) (rule of construction "[w]ords . . . are judged by the company they keep") (citation omitted); *Mott v. Central R.*, 70 Ga. 680 (1883) (the rule of noscitur a sociis); *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (a) (499 SE2d 693) (1998) ("meaning of a word is or may be known from accompanying words"). Further, to give the trial court's construction to the need for unanimous approval of the company's actions to assign the call rights would render Article 10's ability to assign call rights of no meaning, because a call would not be needed if the subject of the call agreed to the assignment and call. Further, such interpretation conflicts with Article 10.1 which states: "a Mem-

ber may sell or otherwise transfer its Member Interest, as provided in this Article 10, without the consent of all Members."

However, the trial court was "right for any reason" that the call had not been effective to divest Besser of his property rights until his death. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002). The Supreme Court held "LifePine has not yet closed its exercise of the 'call' rights as provided for by the Timber Products Agreement because of the ongoing dispute between the parties as to the formula value of the buyout." *Besser v. Rule*, supra at 474, n. 2. "LifePine could exercise its unilateral repurchase rights at any time despite Besser's misconduct or lack thereof. Thus, Besser is not entitled to maintain a position of influence over the companies. Since the Call rights under the operating agreement are still viable, an adequate remedy at law exists." Id. at 475. Thus, Besser retained a member interest at the time of his death to which the convertible preferred member interest automatically adhered, because the call exercise had not been effective.

The provisions of Article 10 dealing with the exercise of a call by the company or an assignee nowhere state that all a member's interests as a property right are lost upon notice of a call. The operating agreement anticipated that there could arise a dispute as to fair market value of a member interest, taking some time to determine under the operating agreement. Article 1.11. Further,

> [t]he Call provisions above notwithstanding, a Call shall not be effective at a time other than Besser's death or Permanent Disability if the payment terms for the Call will cause the Company to become or remain insolvent. A Call will be deemed a continuing Call and will become effective at such time in the future as the Call will not cause the Company to become or remain insolvent.

Article 10.2.2. Since Besser's death automatically converted the note to a convertible preferred member interest, determined value, and was not delayed by insolvency, then LifePine's attempt to execute an effective call of the member interest also resulted in a call of the adhered convertible preferred member interest. Thus, LifePine's continuing assigned call, which had not been effectively executed on the member interest upon Besser's death, now automatically under the operating agreement included both the member's interest as well as the convertible preferred member's interest for LifePine. The acquisition of all Besser's interests, both member interest and convertible preferred member interest, was to gain control of the company assets, i.e., the patent and trademark. Such provision of the operating agreement clearly indicates that a call to buy for a fair market

value of zero for Besser's member interest was never contemplated and that a call would be delayed until the company became solvent again. Under the facts of this case, the defendants' appraiser testified that the company was insolvent at the time of the call; therefore, under the express terms of the operating agreement the call was not effective until such future date when the company became solvent again. Had Besser appointed an appraiser under Article 1.11, such act would have allowed a third appraiser to be appointed. But Besser refused to do this and frustrated the operating agreement, causing the stalemate under the operating agreement, because such section had no method to resolve such an impasse. Obviously, Besser sought to avoid being bought out for nothing. Since the operating agreement did not provide a solution to such impasse, then the Georgia Business Corporation Code would apply. OCGA §§ 14-2-641; 14-2-1302 et seq.; 14-2-1330.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JANUARY 26, 2004 —
RECONSIDERATION DENIED FEBRUARY 6, 2004 ▮▮▮▮▮

*Thomas A. Nash, Jr.*, for appellants.
*Gary W. Bross*, for appellee.