**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2012. ARNSDORFF v. PAPERMILL PLAZA, LLC et al.          McF-099

MCFADDEN, Judge.

This appeal arises from a trial court judgment denying a claim for a leasing commission sought pursuant to the terms of a limited liability company's operating agreement. Because the trial court correctly ruled that the claimed commission was not due under the terms of the agreement because certain prerequisites, including the adoption of an overall plan for the development of a shopping center, were not met, we affirm.

Papermill Plaza, LLC (hereinafter "Plaza") was formed to develop a retail shopping center. The original members of Plaza were Branch Capital Partners, LP (hereinafter "Branch") and Papermill Partners, LLP (hereinafter "Partners"). Plaza and Branch filed a complaint for declaratory relief against Stephen Arnsdorff,

claiming that Partners was dissolved and that Arnsdorff, as former sole member of Partners and purported successor-in-interest, was no longer a member of Plaza. Arnsdorff answered and filed a counterclaim, stating that he is the successor of Partners, that in April 2011 Plaza entered into a lease with Whole Foods Market Group, and that as a result of that lease he is entitled to a commission owed pursuant to Plaza's operating agreement. After a hearing, the trial court entered final judgment in favor of Plaza and Branch on their complaint for declaratory relief, finding that Arnsdorff has not been a member of Plaza since October 31, 2011. And after denying Arnsdorff's motion for summary judgment on his counterclaim, the trial court entered final judgment in favor of Plaza and Branch, finding that Arnsdorff is not entitled to the claimed commission. Arnsdorff appeals.

1. *Leasing commissions under the operating agreement.*

Arnsdorff contends that the trial court erred in finding that he is not entitled to a leasing commission under the operating agreement. The contention is without merit.

Plaza's operating agreement identifies Branch as the company's managing member. Article 10.3 of the operating agreement expresses the members' "intention that the shopping center . . . be redeveloped and renovated," and also sets forth

2

Partners' preliminary duties with regard to the redevelopment. That article provides, among other things, that Partners shall

> develop a detailed plan for the redevelopment of the Property. Branch shall consult with [Partners] on a regular basis with respect to each such aspect of the redevelopment of the Property. The overall plan finally approved by Branch for the redevelopment of the Property shall be referred to herein as the "Development Plan." *Once adopted, [Plaza] shall engage [Partners] . . . to implement the Development Plan.* (Emphasis supplied.)

The fees to be paid to the members were set forth in Article 10.4 of the operating agreement. Subsection (b) of that article established Branch's management fee as four percent of the gross income of the property. And subsection (c) of that article sets forth the fees to be paid to Partners. The following article, at section 10.4 (c), specifies what had to happen for Partners to earn those fees.

> *At such time as the Members agree to the Development Plan and commence redevelopment of the Property,* [Plaza] shall engage [Partners] . . . as developer to supervise and manage redevelopment of the Property. In connection with such engagement, [Plaza] shall pay to [Partners] . . . a development fee equal to three (3%) percent of the budgeted direct costs of implementing such Development Plan . . . . *In addition,* [Plaza] shall engage [Partners] to coordinate the leasing of the Property and shall pay leasing commissions to [Partners] equal to $3.00 per square foot for new leases entered into by [Plaza] where no co-brokers are involved, and $4.50 per square foot for new leases entered into by [Plaza] where one or more co-brokers are involved (with [Partners] being responsible for any fee or commission owed to such cooperating broker. (Emphasis supplied.)

"The construction of a contract is a question of law for the court, and it is the cardinal rule of contract construction that the court should ascertain the intent of the parties. OCGA §§ 13-2-1; 13-2-3." *Davis v. VCP South*, 321 Ga. App. 503, 504 (1) (740 SE2d 410) (2013). The entire contract must be examined to determine the parties' intent. *LifePine Roofing Partners v. Besser*, 265 Ga. App. 464, 467 (594 SE2d 387) (2004). The "court must consider [the contract] as a whole, give effect to each provision, and interpret each provision to harmonize with each other." *AFLAC v. Chubb & Sons*, 260 Ga. App. 306, 307 (1) (581 SE2d 317) (2003) (citation and punctuation omitted).

The plain language of the operating agreement evinces the parties' intent that Partners develop a detailed plan for redevelopment of the property; that such detailed Development Plan be approved by Branch; that the Development Plan be adopted before Plaza engages Partners to implement it; and that upon adoption of the Development Plan and commencement of the redevelopment, Plaza then shall engage Partners to implement the development plan, which includes supervising the redevelopment and coordinating leasing of the property. The first sentence of Article 10.4 (c) is a topic sentence for the entire paragraph, establishing that Plaza shall engage Partners as manager of the redevelopment only after the Development Plan

4

has been adopted. The next two sentences, connected by the conjunction "[i]n addition," serve as distinct items within that topic, establishing the manner in which Partners shall be paid for its services in implementing the Development Plan. See *AFLAC*, supra at 308 n. 2 (conjunctions serve as connectors). Thus, in construing the contract as a whole and harmonizing its provisions, it is clear the parties intended that Plaza's obligations to engage Partners and to pay for its services through development fees and leasing commissions are contingent on adoption of the detailed Development Plan.

Arnsdorff's claimed construction of the contract, that it "creates an unconditional obligation upon Plaza to pay a [leasing] commission to him" for "any lease that Plaza enters at any time with any tenant at any location," is unreasonable and overly broad. Contrary to this overly broad construction, "'a contract should be given a reasonable construction that will uphold the agreement rather than a construction that will render the agreement meaningless and ineffective.' [Cits.]" *Willesen v. Ernest Communications*, 323 Ga. App. 457, 460 (1) (746 SE2d 755) (2013). And as explained above, that reasonable construction provides that Plaza's obligation to pay leasing commissions arises only after the Development Plan has been adopted and Partners has been engaged to coordinate leasing of the property.

5

Arnsdorff, however, has made no showing that the required Development Plan was ever created, approved by Branch and adopted by the members; nor has he shown that redevelopment pursuant to such a plan ever commenced or that Partners was ever engaged to coordinate leasing. On the contrary, at his deposition, Arnsdorff admitted that to his knowledge the Development Plan never existed. Consequently, absent adoption of the Development Plan, Plaza's obligation to pay leasing commissions under Article 10.4 (c) was never triggered. And therefore, the trial court did not err in ruling that Arnsdorff, as successor of Partners, was not entitled to such a commission. Although this was not the basis for the trial court's ruling, "[u]nder the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied. [Cit.]" *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002).

2. *Other enumerations.*

Because of our holding above in Division 1, we need not address any remaining enumerations of error.

*Judgment affirmed. McFadden and Boggs, JJ., concur. Doyle, P. J., concurs in the judgment only.*