[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12540
_____

D.C. No. 1:14-cv-00112-JRH-BKE


GREAT AMERICAN ALLIANCE INSURANCE COMPANY,

                                                    Plaintiff-Appellee,

versus

ULYSSES ANDERSON,

                                                    Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 8, 2017)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and
CHAPPELL,* District Judge.

CHAPPELL, District Judge:

_____

*Honorable Sheri Polster Chappell, United States District Judge for the Middle District of
Florida, sitting by designation.

The appellant was involved in a car accident with an intoxicated driver who was driving a company vehicle with his employer's permission. After a jury found the driver liable and awarded the appellant one million dollars, the employer's insurance company, the appellee, filed this suit for a declaration that the driver was not a permissive user – and thus not covered under the applicable insurance policies – because he broke internal company policies.

Except where specifically excluded, the general purpose of an insurance policy is to provide coverage. The Georgia Supreme Court has held that inquiries into permissive use should extend only to whether a vehicle is used for an approved purpose. *See Strickland v. Georgia Cas. & Sur. Co.*, 224 Ga. 487, 162 S.E.2d 421 (Ga. 1968). A subsequent decision by the Georgia Court of Appeals, however, held that a company's internal rules can govern the scope of permissive use, and that violations thereof can negate an individual's status as an insured. *See Barfield v. Royal Ins. Co. of Am.* 228 Ga. App. 841, 492 S.E.2d 688 (Ga. Ct. App. 1997). Because the district court followed *Barfield*, and thereby narrowed the scope of permissive use beyond what was permitted by *Strickland*, we find that it erred. Therefore, we reverse and remand.

2

## I.    BACKGROUND

### A.    Factual Overview

In 1996, Looper Cabinet Co., Inc. ("LCC"), a Georgia company, hired Brian Hensley to perform services auxiliary to cabinet installation.  In the years that followed, LCC permitted Hensley to drive its 2008 Chevrolet Silverado (the "Looper Vehicle") for both work and personal purposes.  In addition, LCC's owner admitted that under the general permission granted to Hensley, he was allowed to drive the Looper Vehicle to and from his father's lake house.  Hensley exercised this privilege in early June of 2012, and stayed there for some time.

On June 10, 2012, Hensley drank four beers before driving the Looper Vehicle home from the lake house.  While driving, he encountered Appellant-Ulysses Anderson, who approached the Looper Vehicle from behind on a motorcycle.  The parties dispute the ensuing facts, but they agree that Anderson attempted to pass Hensley resulting in an accident that left Anderson severely injured.

Thereafter, Anderson sued Hensley and LCC, alleging that Hensley drove the Looper Vehicle while under the influence of alcohol and caused the accident.  Although LCC was dropped as a defendant, a jury found Hensley liable and awarded Anderson approximately one million dollars in damages.

3

### 1. LCC Internal Policies

For two decades, LLC's internal policies have banned alcoholic beverages on company property and prohibited employees under the influence of alcohol from working in the shop on and off the clock. LLC has also had a substance abuse policy that states, in pertinent part,

> [a]n employee reporting to work visibly impaired will be deemed unable to properly perform required duties and will not be allowed to work. If, in the opinion of the supervisor, the employee is considered impaired, the employee will be sent home or to a medical facility by taxi or other safe transportation alternative – depending on the determination of the observed impairment and accompanied by the supervisor or another employee if necessary. A drug and/or alcohol test may be in order. An impaired employee will not be allowed to drive. Violating these policies may result in termination of employment.

The parties agree that Hensley had acknowledged these policies during his employment.

### 2. GAAIC Insurance Policies

Appellee-Great American Insurance Company ("GAAIC") issued two insurance policies that covered the Looper Vehicle. The primary policy covered LCC as a named insured, as well as "anyone else while using with [its] permission a covered auto . . . ." The umbrella policy also listed LCC as the named insured and covered "[a]ny person . . . with respect to any 'auto' owned by [LCC], loaned to [it], or hired by [it] or on [its] behalf, and used by that person or organization

4

with [its] permission." Under the umbrella policy, GAAIC would pay obligations imposed by law or assumed by the insured that exceeded the limits of the primary policy in the event of "'bodily injury' or 'property damage' that takes place[ ] or 'personal injury' . . . arising from an offense committed."

## B.    Procedural History

On May 5, 2014, GAAIC filed this action against Hensley and Anderson in the United States District Court for the Southern District of Georgia, seeking a declaration of its rights and responsibilities for the damages arising out of the car accident. Specifically, GAAIC sought a declaration that Hensley exceeded the scope of the permissive use granted by LCC at the time of the accident because he drove the Looper Vehicle while intoxicated. Alternatively, it sought a declaration that Hensley's conduct fell under a policy-coverage exclusion. Finally, GAAIC sought a declaration that the language in its policies prevented the assessment of punitive damages awarded in the underlying trial.

At the close of discovery, GAAIC and Anderson each moved for summary judgment. The district court granted GAAIC's motion, relying on *Barfield* to find that Hensley violated LCC's internal policies by driving the Looper Vehicle while intoxicated, and, therefore, exceeded the scope of his permissive use at the time of the accident. As a result, the district court found that Hensley was not an insured

at the time of the accident, and that GAAIC owed no duty to cover the damages awarded at the trial of the underlying action. Anderson now appeals.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment and draw "all reasonable inferences and review[ ] all evidence in light most favorable to the non-moving party." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

## III.    DISCUSSION

Anderson urges us to reverse the district court's decision to grant summary judgment in GAAIC's favor. He argues that the district court improperly deviated from the bright-line permissive use standard set forth by the Georgia Supreme Court in *Strickland*. GAAIC wants us to affirm the district court's decision

6

because it maintains that *Barfield*, a decision from the Georgia Court of Appeals, controls the Eleventh Circuit's calculus and allows internal company rules to narrow the scope of an automobile's permissive use. We thus must decide the scope of a permissive use clause under Georgia law.

For the purposes of insurance coverage, an individual using an automobile with the express permission of an insured is a permissive user. In the event of an accident, the permissive user is generally covered under the named insured's insurance policy as a third-party beneficiary. Once permission is given, whether liability coverage is provided to the third-party hinges on whether the individual exceeded the scope of permission granted by the owner.

Where, as here, an action is based on diversity, Georgia's substantive law governs the interpretation of an insurance policy. *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir. 1999), certified question answered sub nom. *SCI Liquidating Corp. v. Hartford Ins. Co.*, 272 Ga. 293, 526 S.E.2d 555 (2000). In Georgia, insurance policies are interpreted by ordinary rules of contract construction. *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). Questions of contract construction are matters of law and are properly handled by the court. *See Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687 (1989).

"To determine whether an insurer owes its insured a duty to defend a particular lawsuit, Georgia law directs us to compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998); *see also Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 85-86, 259 S.E.2d 39, 41 (1979). An insurance policy is "considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." *Boardman Petroleum*, 269 Ga. at 328, 498 S.E.2d at 494.

Moreover, "[e]xclusions from coverage sought to be invoked must be strictly construed." *SCI Liquidating*, 181 F.3d at 1214-15 (quoting *Tifton Mach. Works, Inc. v. Colony Ins. Co.*, 224 Ga. App. 19, 20, 480 S.E.2d 37 (1996)). In this vein, all ambiguities as to policy exclusions are interpreted in favor of coverage because "the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 223 F.3d 1253, 1255 (11th Cir. 2000), certified question answered, 273 Ga. 710, 544 S.E.2d 156 (2001).

In 1968, the Georgia Supreme Court issued its seminal decision on the scope of permissive use in the context of an employee's violation of company policy. In *Strickland*, an insured company allowed its employee, Carter, to use a company

8

vehicle to drive himself and coworkers to and from work.  224 Ga. at 488, 162 S.E.2d 421 at 423.  The company also let Carter keep the vehicle overnight at his home.  *Id*.  Yet, the company strictly prohibited another employee, Williams, from driving the vehicle.  *Id*.  Despite that express prohibition, Carter let Williams drive the vehicle along the normal route to Carter's home, and an accident ensued. The company's insurer later filed suit seeking a declaration that it had no duty to defend Williams or Carter, or to pay any judgment entered against them.  *Id*. at 487-88, 162 S.E.2d at 422.

The insurance policy's permissive use provision provided coverage for the company and "any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."  *Id*. at 488, 162 S.E.2d at 423.  The Georgia Supreme Court found no distinction between the terms "actual use" and "use."  *Id*. at 489, 162 S.E.2d at 423-24.  It noted, however, that the term "use" had two meanings – first, as it related to the *operation* of the vehicle, and second as to the *purpose* served by the vehicle.  *See id*.  Under that lens, the court held that a finding of permissive use under the policy only required permission for the *purpose* served by the vehicle, and that the operational aspects were unimportant.  *See id*. at 492, 162 S.E.2d at 425.  Pertinently, the court found

9

[t]he policy, among other things, insures against obligations arising from the negligent or unlawful operation of the described vehicle. Under appellee's contention if the named insured permitted the use of the vehicle and at the same time prohibited its negligent or unlawful operation, it would defeat the very purpose of the policy. Therefore, the 'actual use' of the vehicle within the meaning of the policy cannot reasonably relate to the particular manner of its operation. At most it could relate only to whether or not permission to operate the vehicle had been given. And even this would have no application to the first permittee who had been given permission to use the vehicle for a particular purpose since such authorization necessarily implies permission to operate the vehicle. Furthermore, the policy provides: 'The purposes for which the automobile is to be used are 'business and pleasure.' This indicates to us that the policy is concerned with the purpose to be served by the vehicle and not its operation. If the policy intended that 'actual use' included the operation of the vehicle, it could have stated so plainly.

*Id*. at 489-90, 162 S.E.2d at 424.

As to Carter and Williams, the Georgia Supreme Court found that, even in scenarios where employees violated express prohibitions, insurers had been found liable "where the use to which the car was being put was within the scope of the initial permission and the first permittee was riding in the car or its operation by the second permittee was for his benefit or advantage." *Id*. at 491-92, 162 S.E.2d at 424. Given the possibility that the vehicle's progression to Carter's home would have been in the scope of the permission originally granted by his employer, and to Carter's advantage, the court held that there were genuine issues of material fact

10

that precluded summary judgment on whether the company had expressly or impliedly granted permission to operate the vehicle at the time of the accident.  *See id*. at 492, 162 S.E.2d at 425.

Twenty-nine years later, a Georgia Court of Appeal broke with *Strickland* by finding that a company's internal rules could govern the scope of permissive use. In *Barfield*, an insurance company and its named insured brought an action seeking a declaration of their liability for damages arising from an accident involving the insured's employee, who drove a company vehicle while intoxicated.  228 Ga. App. at 841-42, 492 S.E.2d at 690.  The insurance policy covered the company and "anyone else while using with [the company's] permission a covered auto [the company] owns."  *Id*. at 843*,* 492 S.E.2d at 690.  The company also had an internal policy that prohibited "possession and consumption of alcoholic beverages . . . in company vehicles . . . ."  *Id*.

Tellingly, the appellate court failed to even mention *Strickland* in its opinion, finding that permissive use clauses in Georgia could be narrowed by "instructions, rules or regulations."  *Id.*, 492 S.E.2d at 691.  The court continued that "where a driver uses a vehicle with permission, but violates the scope of the permission granted by engaging in activity the named insured has expressly forbidden, the driver is not an 'insured' under the permissive use clause . . . for any collision occurring during the driver's unauthorized use."  *Id*.  As such, the

11

appellate court held, because the company "told [the driver] he could not drive the vehicle when he was drinking, his use of the vehicle at a time he was admittedly under the influence of alcohol was unauthorized and nonpermissive." *Id.*

We find *Strickland* and *Barfield* to be irreconcilable because they represent mutually exclusive premises. *Strickland* holds that the only inquiry relevant to determining the scope of a generic permissive use clause is whether a vehicle is used for an approved purpose. *See* 224 Ga. at 492, 162 S.E.2d at 425. In so doing, the Georgia Supreme Court found that where a vehicle is used for an approved purpose, an employee's violations of explicit company policies do not foreclose status as a permissive user. *See id.* at 492, 162 S.E.2d at 425. This does not square with *Barfield*, which allowed an insurer to look beyond the purpose and to a company's internal rules to discern the scope of permissive use. *See* 228 Ga. App. at 843, 492 S.E.2d at 690.

An assessment of the jurisprudence of Georgia reveals that *Strickland* has not been overruled. When interpreting matters of state law, we "must follow the decision of the state's highest court . . . ." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). Hence, the *Strickland* decision requires us to hold that Hensley did not exceed the scope of his permission, despite his intoxication. Notably, we are not alone in following this rule. *See Scott v. Government Employees Insurance Co.*, 305 Ga. App. 153, 158, 700 S.E.2d 198, 202 (Ga. Ct.

App. 2010) ("[t]he permission to use contained in [the] omnibus clause refers to the purpose for which the permission was given and not to the operation of the vehicle."); *see also Allstate Ins. Co. v. Spillers*, 252 Ga. App. 26, 28, 555 S.E.2d 489, 491 (Ga. Ct. App. 2001) ("[T]he permission to use contained in [the] omnibus clause refers to the purpose for which [the] permission was given and not to the operation of the vehicle.") (quoting *Ga. Farm & Ins. Co. v. Allstate Ins. Co.*, 190 Ga. App. 593, 594, 379 S.E.2d 619, 620 (Ga. Ct. App. 1989)); *Auto-Owners Ins. Co. v. Smith*, 178 Ga. App. 420, 422, 343 S.E.2d 129, 131 (Ga. Ct. App. 1986) ("[T]he 'actual use' contemplated and intended by the policy refers only to the purpose to be served and not the operation of the vehicle.") (quoting *Strickland*, 162 S.E.2d at 425).

Turning to this appeal, the district court cited *Strickland* for the proposition that the scope of permissive use was limited "to whether or not permission to operate the vehicle had been given." In the end, however, the court employed a *Barfield* analysis. In doing so, it found that Hensley did not have permission to use the Looper Vehicle in violation of LCC's company rules – namely, while intoxicated. Because Hensley was under the influence at the time of the accident, the court held he was not a covered insured. This interpretation of permissive use contravenes *Strickland*. *See* 224 Ga. at 492, 162 S.E.2d at 425.

Had the district court properly applied *Strickland*, its analysis would have been limited to whether LCC approved of the *purpose* for which Hensley was using the Looper Vehicle at the time of the accident. *See id.* Under the objective standard employed for determining permissive use, *see Allstate Ins. Co. v. Spillers*, 252 Ga. App. 26, 28, 555 S.E.2d 489, 491 (2001), the undisputed record shows that Hensley was permitted to drive the Looper Vehicle for the purpose it was used on the day of the accident – to drive home from his father's lake house.[1] As such, we find that Hensley is an insured for purposes of the underlying action.

Notwithstanding the Georgia Supreme Court's clear precedent, GAAIC urges us to distinguish *Strickland*. It maintains that its policies contain different language than the corresponding policy in *Strickland*, and that *Strickland* involved a decision implicating the second permittee doctrine while the instant matter presents no such issue. These arguments are nonstarters.

Although the *Strickland* policy involved the phrase "actual use," the court there found it to be functionally equivalent to the term "use." 224 Ga. at 489, 162 S.E.2d at 423-424. The policies here also include the term "use" or variants thereof, and as such, they offer no meaningful difference to their counterpart in *Strickland*. To the extent that GAAIC argues that the *Strickland* policy differed

---

[1] Because the GAAIC policies contained only general permissive use clauses, it is inconsequential for purposes of coverage whether Hensley was violating LCC company rules at the time of the accident.

14

because it included the term "purpose," the actual phrase there extended coverage for "[t]he purposes . . . [of] 'business and pleasure.'" *Id*. at 490, 162 S.E.2d at 424.  Although *Strickland* implied that the language was important in determining that the policy concerned the purpose, rather than the manner of operation, the court also narrowed its findings by holding that "[i]f the policy intended that 'actual use' included the operation of the vehicle, it could have stated so plainly." *Id*.  As it was in *Strickland*, so it is here.  If GAAIC had intended to bar coverage for violations of LCC's internal rules, it could have included such language in its policies to the extent permitted under Georgia law. Moreover, that *Strickland* addressed the second permittee doctrine is of no consequence here.  *Strickland* defined the scope of permissive use to include only the purpose of a third-party's use of a vehicle.  And merely because that case involved an additional level of analysis as to whether the proffered purpose was satisfied by a second permittee does not alone distinguish this case.  *See, e.g.*, *Scott*, 700 S.E.2d at 202–03 (a first permittee case).

In conclusion, the purpose test set forth in *Strickland* controls our inquiry into permissive use.  Because the district court extended its analysis further, we reverse.[2]  Although this opinion disposes of the question of permissive use, the

---

[2] GAAIC also argues that Hensley is not an insured because he either expected or intended to injure Anderson at the time of the accident.  Although the district court did not decide this issue,

district court did not decide GAAIC's argument that the provisions of its policies preclude the punitive damages awarded in the underlying trial. Accordingly, we remand the proceedings for a decision on that issue.

REVERSED AND REMANDED.

---

a review of the record reveals this argument to be meritless. Consequently, we summarily reject this argument on appeal.